### S03A0517. SMITH v. GUEST POND CLUB, INC.
(586 SE2d 623)

SEARS, Presiding Justice.

Appellee Guest Pond Club, Inc. ("Guest Pond") owns a 1,700 acre lake, which it maintains as a wildlife refuge. The eastern boundary of Guest Pond's property abuts the western boundary of appellant Henry Smith's property, a 2.84 acre tract. Guest Pond alleged that Smith dug a canal approximately six feet deep and wide enough to permit passage for a boat, commencing at Smith's western boundary line and going westward onto Guest Pond's property. Guest Pond also alleged that Smith emblazoned some of the cypress trees on Guest Pond's property with blue paint and cut down a number of trees on the property.

Guest Pond filed a petition claiming that Smith's actions constituted a continuing trespass. Guest Pond's petition sought a temporary restraining order ("TRO") to prevent Smith from further trespassing. It also sought additional temporary relief and a permanent injunction. On the same day that the petition was filed, without notice to Smith, the trial court entered a TRO prohibiting Smith from conducting any further activities on Guest Pond's property.[1] Five days later, Smith was served with Guest Pond's petition and became aware of the TRO. Smith answered the petition and filed a counterclaim asking that a jury trial be held in order to determine the location of the boundary line dividing his and Guest Pond's property. Smith's counterclaim asked the trial court to enter a TRO to maintain the status quo until such time as the boundary line dispute was resolved.

Approximately one month later, a hearing was held, at which Smith objected to the grant of anything other than temporary relief and reasserted his request for a jury trial on the boundary line issue. Following the hearing, the trial court awarded Guest Pond permanent injunctive relief and ordered Smith to pay Guest Pond's attorney fees and expenses.

1. A trial court may not, absent the agreement of the parties and the entry of a consolidation order, consolidate a hearing on an appli-

---

[1] See OCGA § 9-11-65 (b).

cation for an interlocutory injunction with a hearing on the merits of a complaint.[2] Relying on this principle, Smith argues that the trial court erred when, despite Smith's objection and without entering a consolidation order, it ruled on the merits of Guest Pond's complaint and entered permanent injunctive relief after the initial hearing. For its part, Guest Pond argues that because its complaint did not seek interlocutory relief, but rather only the entry of a TRO and a permanent injunction, the trial court was free to rule as it did. This argument, however, is at odds with the language of the complaint, which sought a "temporary restraining order," a "temporary order" and a "permanent injunction."

After entering the TRO, the trial court set down a hearing for July 25, 2002, to determine "why the prayers of [Guest Pond] for relief should not be granted." At the hearing's commencement, as he does on appeal, Smith asserted that he understood the hearing was intended to address only temporary relief and not the merits of Guest Pond's complaint. Guest Pond disputes this claim and argues that Smith received fair notice that the July 25th hearing would concern the entry of permanent injunctive relief. We disagree.

OCGA § 9-11-65 (b) (2) provides that when, as here, a party obtains a TRO without notice, a hearing on an interlocutory injunction shall take place "at the earliest possible time and shall take precedence over all matters except older matters of the same character." Subsection (b) (2) also states that when the matter comes on for hearing, the party who obtained the TRO "shall proceed with the application for an interlocutory injunction." Thus, the Code provides that once a TRO is obtained, there is generally a hearing on interlocutory relief to be followed by a trial on the merits.[3] In this case, if the July 25th hearing was intended to deviate from this standard progression, Smith should have received explicit notice that the hearing would address the merits of Guest Pond's complaint and whether permanent injunctive relief was appropriate. Otherwise, Smith could not be expected to prepare adequately for the hearing.

The trial court's scheduling order, however, stated only that the July 25th hearing would concern Guest Pond's "prayers for relief." Insofar as the complaint sought a TRO as well as both temporary and permanent relief, and because it is standard practice for hearings such as the one at issue here to address interlocutory matters, we believe that the scheduling order provided fair notice only of a hearing to address Guest Pond's request for "temporary" relief. Moreover, we do not believe the scheduling order can be construed in any way to

---

[2] OCGA § 9-11-65 (a) (2); *Brevard Fed. Savings &c. Assn. v. Ford Mountain Investments*, 261 Ga. 619, 620 (409 SE2d 36) (1991).

[3] See Gregory, *Georgia Civil Practice*, § 8-1 (2d ed.).

have provided fair notice of a final hearing intended to address the entry of permanent relief.

As noted above, a trial court may, with the parties' acquiescence and the entry of a consolidation order, consolidate a hearing on an application for interlocutory relief with a hearing on the merits of a complaint.[4] In this case, however, the trial court failed to enter a consolidation order and, in any event, could not have done so over Smith's stated objections. It follows that the trial court was not authorized to enter permanent relief after the July 25th hearing.

Because Smith did not receive fair notice of a hearing to address the entry of permanent injunctive relief, and because the trial court was unauthorized to make a final ruling on the merits of Guest Pond's complaint absent Smith's consent and the entry of a consolidation order, the trial court's judgment in this case must be declared void and ordered vacated.[5]

2. Smith urges that the trial court erred by denying his motion to recuse or disqualify the trial court judge, Judge Bessonette, a juvenile court judge who was sitting on the Atkinson County Superior Court bench by designation.[6] As stated in the affidavit of Smith's counsel that accompanied the motion to disqualify, after the hearing but before entry of the trial court's order, counsel became aware of certain contacts between Judge Bessonette and Guest Pond's lawyer, Sutton. In addition to their respective Alapaha Circuit law practices, Judge Bessonette and Sutton serve as the only two juvenile court judges for the Alapaha Circuit. Furthermore, as juvenile court judges, both Judge Bessonette and Sutton may be designated to sit as superior court judges,[7] and both have authority to ratify the designation of the other to do so.[8]

Canon Two of the Code of Judicial Conduct "mandates that judges avoid not only actual impropriety, but that they avoid even the appearance of impropriety."[9] An appearance of impropriety exists in situations in which reasonable minds might perceive that a judge's ability to carry out his or her responsibilities with impartiality, integrity and/or competence is impaired.[10] By presiding over this matter, we believe that Judge Bessonette created an appearance of

---

[4] OCGA § 9-11-65 (a) (2).

[5] See *Brevard Fed. Savings &c.*, 261 Ga. at 620.

[6] See OCGA § 15-1-9.1 (b) (2) (permitting the chief judge of a particular court to request assistance from the judge of a different court, who will sit by designation).

[7] Id.

[8] See OCGA § 15-1-9.1 (c) (when requested by a judge of either a requesting or an assisting court, all judges of that particular court shall vote on whether to ratify the decision to permit a fellow judge to sit by designation on another court). The record shows that this Code section has been invoked by the judges of Atkinson County.

[9] *In the Matter of: Inquiry Concerning a Judge*, 269 Ga. 425 (499 SE2d 319) (1998).

[10] Commentary to Canon Two, Code of Judicial Conduct.

impropriety.

As the only two juvenile court judges in their circuit, Judges Bessonette and Sutton must confer regularly about issues pertaining to their court, their respective caseloads, and numerous other confidential matters. Moreover, either man's designation to sit as a superior court judge, and to be compensated accordingly, must be ratified by the other man. The record in this case is replete with orders of the Atkinson County Superior Court in which Juvenile Court Judges Bessonette and Sutton "agreed to provide a Juvenile Court Judge to assist [the Superior Court] and to designate [either Bessonette or Sutton] to assist." Thus, in order for Judge Bessonette to have sat on the bench as a designated superior court judge when this particular case was heard and decided, normal procedures in Atkinson County would require that his designation be consented to and ratified by Guest Pond's counsel, Sutton. At a minimum, this arrangement allowed Sutton to do indirectly that which he is prohibited from doing directly — participate in the selection of the judge before whom his client's case would be heard and decided.[11]

Furthermore, our Judicial Qualifications Commission has opined that a judge of a particular court should never preside over a matter involving another judge from the same circuit:

> Simply stated, the public must believe in the absolute integrity and impartiality of its judges. . . . Consequently, even without a showing of actual bias, prejudice or unfairness, and regardless of the merits or timeliness of a Motion to Recuse, this Commission concludes that it is inappropriate for any trial court judge to preside in any action wherein one of the parties holds a judicial office on the same or any other court which sits in the same circuit [ ].[12]

Due to the confidential relationship between attorneys and their clients, we believe these same principles should apply where (as here) counsel for one of the parties holds judicial office on the same court as the presiding judge.

Regardless of whether any actual improprieties occurred in the hearing of this case, the professional relationship between Judge Bessonette and counsel Sutton was such that persons of reasonable minds might perceive that the Judge's ability to carry out his responsibilities with impartiality and integrity was compromised. By pre-

---

[11] See Unif. Sup. Ct. R. 3.1 (directing all persons to refrain from attempting in any way to affect the assignment of a judge to a particular matter); *Lumpkin v. Johnson*, 270 Ga. 392, 397 (509 SE2d 621) (1998) (Sears, J., dissenting).

[12] Judicial Qualifications Commission, Opinion 220.

siding over this case, Judge Bessonette potentially brought the impartiality and unbiased nature of the judicial office into question, something this Court will not countenance. Our duty is to " 'maintain the honor and dignity of the judiciary and the proper administration of justice.' "[13] It follows that the trial court erred by denying Smith's motion to disqualify or recuse Judge Bessonette, that Judge Bessonette should not have presided over or ruled upon this matter, and that the orders entered by Judge Bessonette in this case must be declared void and ordered vacated.

3. Although we are vacating the trial court's orders, we will nonetheless address a problematic issue so that it may be avoided on remand. In its grant of injunctive relief, the trial court ordered Smith to refill the canal he had dug, to replace any trees he had removed from Guest Pond's property and to remove any blue marking he had painted on Guest Pond's trees, all "to the reasonable satisfaction of [Guest Pond's] board of directors." In this ruling, the trial court improperly delegated authority for determining whether its order was complied with to the subjective and various opinions of Guest Pond's board. The ruling also failed to set forth sufficient standards to adequately inform Smith what was required of him. A judgment must, of course, be reasonable and certain,[14] and it is the trial court's, rather than the parties', function to determine whether a ruling has been fully complied with. Accordingly, in the event injunctive relief is granted on remand, the trial court should refrain from ordering Smith to do anything "to the reasonable satisfaction" of Guest Pond and should state clearly and precisely what is encompassed within the grant of relief.

*Judgment vacated and case remanded. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003 —
RECONSIDERATION DENIED OCTOBER 6, 2003.

*James D. Hudson, Robert B. Sumner*, for appellant.
*Berrien L. Sutton*, for appellee.

---

[13] *In the Matter of: Inquiry Concerning a Judge*, 265 Ga. 843, 848 (462 SE2d 728) (1995).
[14] Ruskell, *Georgia Practice and Procedure* § 23-4 (2001).