## A05A1340. WHITWORTH v. THE STATE.
### (622 SE2d 21)

BLACKBURN, Presiding Judge.

Following a jury trial, Bobby K. Whitworth appeals his conviction for influencing legislative action for pay while a State official.[1] Whitworth does not challenge the sufficiency of the evidence, nor outline any specific harm which he suffered as a result of the actions of which he complains in this prosecution. Rather, he complains primarily of the actions of the Attorney General's office in briefing J. Tom Morgan, the second special prosecutor appointed following the voluntary recusal in this case of the Attorney General and his staff, and the failure of the trial court to disqualify Morgan based on his personal interest in the matter. Discerning no reversible error, we affirm.

On appeal, we view the evidence and all inferences therefrom, in the light most favorable to the verdict. So viewed, the record reflects that while serving as Chairman of the Georgia Pardons and Paroles Board ("Paroles Board"), Whitworth strongly encouraged State legislators to enact Senate Bill 474 during the 2000 General Assembly session. This bill effectively transferred supervision of approximately 25,000 misdemeanants from the State Department of Corrections to the individual counties. Cf. OCGA § 17-10-3 (f). Private probation companies stood to benefit greatly, if the individual counties chose to contract out this supervisory function to such companies, upon passage of Senate Bill 474. It essentially had no effect on Whitworth's agency, the Paroles Board.

On the day before the final approval of Senate Bill 474, Whitworth accepted $75,000 from his friend, Lanson Newsome, who was a principal of Detention Management Services, Inc. (DMS), a private probation company which stood to profit from the passage of the bill. Although Whitworth maintains that this payment was a consulting fee for introducing DMS to county and city officials over three years (at an agreed-upon $25,000 per year), Newsome told Jonathan Bastis, whose company, Sentinel Offender Services, later bought out DMS, that the payment (reflected in the company's books as other company labor) was for Whitworth's assistance in procuring passage of Senate Bill 474.[2] After purchasing the company, Sentinel showed the payment on its books as a lobbyist payment for passage of the legislation.

---

[1] See OCGA § 16-10-4 (a).

[2] After Newsome testified and denied any connection between the $75,000 and Senate Bill 474, this evidence came in through Bastis as a prior inconsistent statement. See *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982) ("a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence").

The jury found Whitworth guilty[3] of violating OCGA § 16-10-4 (a), which provides:

> Any officer or employee of the state or any agency thereof who asks for or receives anything of value to which he is not entitled in return for an agreement to procure or attempt to procure the passage or defeat the passage of any legislation by the General Assembly, . . . shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

This combined with other evidence was sufficient to support the verdict. See *Jackson v. Virginia*.[4] Whitworth does not challenge this conclusion.

1. Whitworth contends that the trial court erred in failing to disqualify Morgan from the prosecution of this case because Morgan had a personal interest in its outcome and had engaged in prosecutorial misconduct.

We apply an abuse of discretion standard when reviewing a trial court's ruling on a motion to disqualify a prosecutor. See *Head v. State*[5] (abuse of discretion standard applies to rulings on motion to disqualify). Such an exercise of discretion is based on the trial court's findings of fact which we must sustain if there is any evidence to support them.

(a) We first address Whitworth's contentions regarding the personal interest of Morgan. The trial record is viewed in support of the trial court's ruling applying the any evidence and abuse of discretion standards. So viewed, the evidence shows that, Linda Thompson, a Paroles Board employee, was told by Walter Ray, a member of the Paroles Board, that Newsome, through DMS, had paid him money to procure passage of Senate Bill 474. Thompson informed Ray that she thought this practice was improper.

When Thompson reported her conversation with Ray to Chairman Whitworth, he instructed her to forget what she had been told. In doing so, Whitworth did not disclose to Thompson that he was also receiving payments from DMS. Thompson was unaware of DMS's payments to Whitworth until she subsequently heard it reported on the local news. When the $75,000 payment to Whitworth came to light, Whitworth told yet another Paroles Board employee on at least

---

[3] The court sentenced Whitworth to confinement for a period of five years, with six months to serve, and the remainder of four years, six months on conditional probation, and a fine of $50,000.

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] *Head v. State*, 253 Ga. App. 757, 758 (2) (560 SE2d 536) (2002).

three occasions that "he would not ever be charged with anything to do with this matter because . . . he knew where all the skeletons were buried on Capitol Hill and that because of that, nobody could come after him."

Whitworth contends that Morgan had a personal interest in his prosecution because Morgan had agreed to employment with Balch & Bingham, although it had not been announced at the time of the trial. Assuming this to be the case, this does not establish any interest in Thompson or in Balch & Bingham in Whitworth's conviction. Whitworth contends that Thompson had retained Mike Bowers, a partner at Balch & Bingham, to represent her in negotiating a settlement with the Paroles Board regarding adverse employment actions taken against her. As Thompson was a State witness, Whitworth contends Balch & Bingham had an interest in his conviction, and thus Morgan did also. The matter for which Bowers had been retained by Thompson was settled long before the summer of 2003. Bowers, however, did attend Thompson's interview by the Georgia Bureau of Investigation ("GBI") when requested to do so by Thompson, also prior to the summer of 2003.

There is nothing in the record which indicates that Thompson, who was called as a State's witness, but had no knowledge of Whitworth's receiving any money from DMS, had any personal interest in securing his conviction. Neither is there any evidence in the record which indicates that Bowers, or any member of Balch & Bingham, had any such interest. Indeed, Bowers testified to the contrary. Three other witnesses testified that there was no connection whatsoever between Thompson's interests and Morgan's prosecution of the case or his employment with Balch & Bingham. Morgan denied that he discussed the case with members of Balch & Bingham until after the trial when he became employed there. Substantial evidence supported the trial court's finding that Morgan's employment with Balch & Bingham following his term as District Attorney of DeKalb County and the completion of his special assignment, created no special interest in Morgan which required disqualification.

(b) Also regarding Morgan's alleged personal interest in the case, Whitworth contends that the trial court applied the wrong standard to its review of the facts, when it noted that there is a difference between the lesser degree of neutrality required of a prosecutor and the greater degree required of a judge.

As a general matter, the standard for disqualification was set forth in *Williams v. State.*[6] Our Supreme Court held:

---

[6] *Williams v. State*, 258 Ga. 305, 314 (2) (B) (369 SE2d 232) (1988).

There are two generally recognized grounds for disqualification of a prosecuting attorney. The first such ground is based on a conflict of interest, and the second ground has been described as "forensic misconduct."

[For example, a] conflict of interest has been held to arise where the prosecutor previously has represented the defendant with respect to the offense charged, or has consulted with the defendant in a professional capacity with regard thereto; such conflict also has been held to arise where the prosecutor has acquired a personal interest or stake in the defendant's conviction.

(Citations omitted.) Id. In applying these standards, the reversal of a conviction due to such a conflict of interest requires more than a " 'theoretical or speculative conflict.' " *Lyons v. State.*[7] An actual conflict of interest must be involved.

In addition, because of their differing roles and responsibilities, the neutrality required of a judge is necessarily of a higher degree than that required of a prosecutor.

While the prosecuting officer should see that no unfair advantage is taken of the accused, yet he is not a judicial officer. Those who are required to exercise judicial functions in the case are the judge and jury. The public prosecutor is necessarily a partisan in the case. If he were compelled to proceed with the same circumspection as the judge and jury, there would be an end to the conviction of criminals.

(Punctuation omitted.) *State v. Sutherland.*[8] See *Young v. United States*[9] ("the standards of neutrality for prosecutors are not necessarily as stringent as those applicable to judicial or quasi-judicial officers. . . . We may require a stronger showing for a prosecutor than a judge in order to conclude that a conflict of interest exists.") (citation and footnote omitted). Compare *Smith v. Guest Pond Club*[10] (judge should have been disqualified where judge and plaintiff's counsel were the only two juvenile court judges in circuit and thus had an ongoing professional and collegial relationship; moreover, plaintiff's counsel was part of process to designate this judge to serve as the superior court judge for this particular case).

---

[7] *Lyons v. State*, 271 Ga. 639, 640 (2) (522 SE2d 225) (1999).

[8] *State v. Sutherland*, 190 Ga. App. 606, 607 (379 SE2d 580) (1989).

[9] *Young v. United States*, 481 U. S. 787, 810-811 (III) (B) (107 SC 2124, 95 LE2d 740) (1987).

[10] *Smith v. Guest Pond Club*, 277 Ga. 143, 145-146 (2) (586 SE2d 623) (2003).

These, then, are the relative standards we apply as we review the trial court's denial of Whitworth's motion to disqualify Morgan as the special prosecutor in this case based on his alleged ties to Balch & Bingham. Whitworth's complaints are largely based on speculation and conjecture. Applying the any evidence standard to the record, it is clear that the trial court did not abuse its discretion in denying Whitworth's motion to disqualify Morgan based upon his personal interest in his conviction.

(c) Whitworth's final argument regarding the allegation of Morgan's personal interest is that Whitworth need not show harm from the conflict of interest, for the appearance of impropriety alone is sufficient to require a reversal. See *Young*, supra at 814 (III) (B) (harmless error analysis not appropriate when actual conflict of interest shown). However, since Whitworth failed to demonstrate an actual conflict of interest, this argument is irrelevant to the case.

(d) Regarding the allegation of prosecutorial misconduct, Whitworth contends that Morgan was improperly briefed by members of the Attorney General's staff, after the Attorney General had voluntarily recused himself and his staff from the case. Also, he received improper advice on the plea proposal.

Whitworth enumerates as error the involvement of the staff of the Attorney General in providing a briefing along with the GBI for Morgan when he was determining whether or not he would accept the assignment. He speculates that the Attorney General's office and Bowers were involved in the selection of Morgan by Governor Sonny Perdue. Bowers, however, has testified that his firm was not involved in Morgan's special appointment to the case.

The relevant facts of record show that the Attorney General, Thurbert Baker, was originally handling the case against Whitworth with the investigatory assistance of the GBI. Because allegations of wrongdoing by a member of the Attorney General's staff which involved the Paroles Board in an unrelated matter were under investigation, Baker voluntarily recused himself and his staff from this case.

Following this recusal, Governor Roy Barnes appointed Peter Skandalakis, District Attorney for the Coweta Judicial Circuit, to handle the case. Sometime later, however, Skandalakis determined that he did not have the necessary resources to litigate the matter, and he was allowed to withdraw from the case. At this point, Governor Barnes had been replaced by Governor Perdue, on whom the choice of Skandalakis's replacement fell.

The record shows that Vernon Keenan, director of the GBI and Robert Highsmith, deputy executive counsel to Perdue, each testified that he first suggested Morgan. In addition, Harold Melton, Governor

Perdue's executive counsel, testified that he asked Bowers for recommendations, and that Bowers had provided him with a list of district attorneys which probably included Morgan's name.

The record further shows that, after Baker's recusal, Mike Hobbs and Kim Schwartz, members of the Attorney General's office, briefed Morgan on the status of the investigation when Morgan was determining whether or not to accept the assignment. Hobbs continued to speak with Morgan after he had been named special prosecutor. Keenan also interviewed Morgan about the position, and he later e-mailed Melton that Morgan was willing to take over the case. Shortly thereafter, Morgan was named special prosecutor by an executive order issued by Governor Perdue. At the time, Morgan was the outgoing district attorney in DeKalb County, not having sought reelection.

As he began to investigate the case, Morgan received from Whitworth's counsel a proposal to resolve the case with an administrative procedure and a fine rather than a criminal prosecution. Morgan, who testified that he did not know that there was a firewall in the case, called Hobbs and requested his opinion on the matter. Hobbs informed Morgan that he had anticipated a successful criminal prosecution, but that any decision regarding Whitworth's proposal was Morgan's to make. Morgan eventually rejected Whitworth's proposal and tried Whitworth's case before a jury, which resulted in Whitworth's convictions.

Whitworth now contends that Morgan should have been disqualified from his case because of the involvement of the Attorney General's office after recusal (in the selection of Morgan, in his briefing, and in responding to the plea proposal). Where there has been a recusal, even a voluntary one, there should ordinarily be no further involvement in the case by the recused persons. See *Pope v. State*[11] (recusal generally refers to ceasing involvement in case). Where the Governor is responsible for the appointment of a special prosecutor, and the Attorney General and his staff cannot assist, the Governor is entitled to rely upon his own staff, or to appoint an individual to assist him in that process. Cf. *State v. Evans*[12] (recused judge should not select his own replacement). The better practice would have been for any briefing of Morgan in this case to have been done by Skandalakis, the former prosecutor, or the GBI. And the giving of advice on the plea proposal would appear to have been improper. See generally *Furey v.*

---

[11] *Pope v. State*, 256 Ga. 195, 214 (26) (345 SE2d 831) (1986).
[12] *State v. Evans*, 187 Ga. App. 649, 650 (1) (371 SE2d 432) (1988), overruled on other grounds, *State v. Smith*, 268 Ga. 75, 76 (485 SE2d 491) (1997).

*Comm. on Judicial Performance*[13] (improper for disqualified judge to give advice to new judge on how case should be decided).

Reversing Whitworth's conviction based on the trial court's failure to disqualify Morgan on these grounds, however, would be improper for two reasons. First, regarding the selection and briefing matters, no actual conflict of interest was shown. As previously noted, a prosecutor, who is not a judicial officer, is not held to as high a standard of independence and neutrality as is a judge. The Supreme Court of Georgia has repeatedly held that an "actual conflict of interest" is required to warrant reversal for failure to disqualify. *Pruitt v. State*;[14] see *Chapel v. State*[15] (affirming disqualification of defense attorney who stated his intention to use information on witnesses gained during his part-time employment as county attorney). A "theoretical or speculative conflict" is simply not sufficient. See *Lyons*, supra, and *Sutherland*, supra. Indeed, a reversal would require this Court to hold that, even without any *evidence* that Morgan's prosecution was actually influenced by information obtained from the deputy Attorney General, Morgan still should be disqualified due to the continued wrong of the deputy Attorney General's involvement. This holding would require this Court to *impute* the alleged wrongdoing of the deputy Attorney General to Morgan. Conversely, the Supreme Court of Georgia has held that "[t]he imputed disqualification rule was not meant to encompass governmental law offices." (Punctuation omitted.) *Frazier v. State*.[16]

Second, because Whitworth alleges a factually specific claim of prosecutorial misconduct (the contact between the Attorney General's office and Morgan), Whitworth had to show actual misconduct and actual prejudice to his right to a fair trial in order to reverse his conviction. See *Lamb v. State*;[17] *McGarvey v. State*.[18] See also *Smith v. Phillips*[19] ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). This is unlike the claim of personal interest addressed in Divisions 1 (a) through (c) above, which does not require a showing of prejudice. See *Young*, supra.

Here, Whitworth has failed to show that any prejudice or harm resulted to him from the continued involvement of a recused individual. For example, Whitworth does not even allege that Morgan

---

[13] *Furey v. Comm. on Judicial Performance*, 743 P2d 919, 924 (II) (Cal. 1987).

[14] *Pruitt v. State*, 270 Ga. 745, 753 (18) (514 SE2d 639) (1999).

[15] *Chapel v. State*, 264 Ga. 267, 269-270 (3) (443 SE2d 271) (1994).

[16] *Frazier v. State*, 257 Ga. 690, 694 (9) (362 SE2d 351) (1987).

[17] *Lamb v. State*, 267 Ga. 464, 465-466 (5) (479 SE2d 719) (1997).

[18] *McGarvey v. State*, 186 Ga. App. 562, 564 (2) (368 SE2d 127) (1988).

[19] *Smith v. Phillips*, 455 U. S. 209, 219 (III) (102 SC 940, 71 LE2d 78) (1982).

received any improper information from the Attorney General's office. Nor was there improper influence. Notwithstanding the conversation between Morgan and the deputy Attorney General with respect to a plea bargain for Whitworth, evidence showed that Morgan exercised his independent judgment and decided to take the case to trial and in fact obtained a conviction against Whitworth. Nor is there any showing of retaliation.

As evidence supported its ruling, the trial court did not abuse its discretion in denying the motion to disqualify.

2. In addition to these substantive contentions, Whitworth also criticized the procedural manner in which the trial court handled his motion to disqualify. Just as trial was beginning in December 2003, Whitworth asked for an opportunity to present additional evidence on the matter. The court declined to relitigate the matter. Following his conviction, Whitworth at his motion for new trial hearing (over the State's objection) presented additional evidence on the matter, seeking to show that prior to trial, Morgan had indeed accepted employment with Balch & Bingham. Almost all of this evidence regarded events occurring prior to the November 2003 initial hearing on the matter. Still unpersuaded, the court denied the motion for new trial.

Whitworth's attempts to relitigate the matter just prior to trial and at the motion for new trial hearing were appropriately rejected. Most if not all of the evidence presented at the motion for new trial hearing concerned events taking place prior to the November 2003 hearing and therefore could have been presented at that hearing. The trial court certainly did not abuse its discretion by refusing to relitigate a matter already decided, especially where the additional evidence to be presented in the new rehearing was available to litigants at the time of the first hearing. The court is not required to relitigate matters ad infinitum.

Even if we assume that the court should have reheard the matter, however, the additional evidence presented in the post-trial motion for new trial hearing failed to show an actual conflict of interest. As per the *Williams* standard, Morgan had not previously represented Whitworth nor consulted with Whitworth in a professional capacity. Thus, the only basis for Whitworth's motion was his assertion that Morgan had acquired a personal interest or stake in his conviction. But the trial court as the trier of fact ruled against Whitworth in this regard, finding that Morgan had not acquired a personal interest in Whitworth's conviction. The trial court did not err in ruling on this issue.

3. In addition to his contentions regarding Morgan's disqualification, Whitworth contends that the trial court erred by: (a) allowing two witnesses to testify that they would not have supported the

legislation if they had known of the improper payments made to Whitworth; (b) allowing the State to argue that the jury could make an inference from Whitworth's failure to call certain witnesses; (c) not declaring a mistrial when the State argued that Whitworth was not entitled to the benefit of the doubt; and (d) not giving requested jury instructions.[20]

(a) Whitworth contends that the trial court erred in allowing two witnesses to testify as to whether they would have supported the legislation had they known of Whitworth's financial arrangements with the private probation company. Specifically, the State asked (i) former Governor Barnes whether he would have signed the legislation had he known of the arrangement and (ii) legislator Gerald Greene whether he would have advanced the legislation had he known of the arrangement. Over relevancy objections from Whitworth,[21] both responded in the negative.

"The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases." (Punctuation omitted.) *Freeman v. State*.[22] "Evidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case." *Marshall v. State*.[23] Here, Whitworth as a state official lobbied vigorously for the passage of this bill but carefully chose not to tell the key decision makers about his clear bias in receiving money from the private probation company that stood to benefit greatly from the bill. This surreptitiousness tended to show a consciousness of guilt and of criminal intent on his part; indeed, those decision makers testified that they would not have enacted the legislation had they known of his tainted financial arrangement. The trial court did not abuse its discretion in admitting this evidence.

(b) Whitworth contends that the trial court, over his timely objection, erred by allowing the State to imply in its closing argument that the jury could infer from Whitworth's failure to call three members of the Paroles Board that, contrary to Whitworth's statements otherwise, not all members supported passage of the legislation. On appeal, Whitworth argues that all evidence showed that these other Paroles Board members supported the legislation and that the State stipulated in the motion for new trial hearing that, if called to testify at that hearing, all members of the Paroles Board would express support for the legislation. Whitworth concludes that

---

[20] Whitworth does not challenge the sufficiency of the evidence.

[21] During trial, the State and the court confirmed that during unrecorded bench conferences, Whitworth had made timely relevancy objections to these inquiries.

[22] *Freeman v. State*, 278 Ga. 349, 351 (2) (b) (603 SE2d 214) (2004).

[23] *Marshall v. State*, 275 Ga. 740, 742 (5) (571 SE2d 761) (2002).

the State made a knowing misrepresentation in its closing argument, depriving him of due process.

"It is proper for counsel to comment on the opposing side's failure to produce certain witnesses who have knowledge of material and relevant facts, where the argument is derived from evidence properly before the factfinder." (Punctuation omitted.) *Scott v. State.*[24] Here, Whitworth adduced testimony that all members of the Paroles Board supported the legislation, but did not call three members of that Board to the stand. The State could properly comment on the missing witnesses.

Whitworth's argument that the State knowingly misrepresented the facts of the case to the jury in this regard ignores the trial evidence showing that not all members of the Paroles Board supported the legislation. Thompson testified that other Paroles Board members did not bring the legislation up or otherwise show interest in its passage. A judge testified that the bill would have "zero impact" on the Paroles Board. An assistant commissioner with the Department of Corrections testified that the Paroles Board had no specific interest in the legislation.

Thus, despite the other evidence showing that all members of the Paroles Board supported the legislation, the State clearly had a basis for its argument to the contrary. The State's stipulation that the Board members would have expressed support for the bill at the post-trial motion for new trial hearing does not diminish the fact that at the time the closing argument was given, the jury was allowed to infer otherwise. No evidence conclusively shows that at the time of the closing argument, the State's prosecutor knew how those members would have testified had Whitworth called them at trial. Thus, the factual premise for Whitworth's "patent misrepresentation" argument fails. Compare *Carr v. State*[25] (closing argument replete with references to excluded testimony, to the prosecutor's personal beliefs, and to patent misrepresentations required reversal).

(c) Whitworth argues that the court should have given his orally requested charge that, where witnesses are equally available under subpoena power, no inference can be drawn against either party for failure to call those witnesses. Beyond Whitworth's failure to request this charge in writing (see *Camphor v. State*[26]), this argument fails in light of the court's charge to the jury during the State's closing argument that evidence was equally available to all parties (since all parties had subpoena power) and that the burden of proof was always

[24] *Scott v. State*, 274 Ga. 476, 479 (4) (554 SE2d 488) (2001).

[25] *Carr v. State*, 267 Ga. 701, 711 (10) (482 SE2d 314) (1997).

[26] *Camphor v. State*, 272 Ga. 408, 414 (6) (b) (529 SE2d 121) (2000).

on the State, not the defendant. As this sufficiently covered the subject matter, we discern no error in the court's refusal to give the additional orally requested charge. See *Worley v. State.*[27]

(d) Whitworth claims that the court erred in denying his motion for mistrial arising out of the prosecutor's statement during closing argument that Whitworth was not entitled to the benefit of the doubt. When Whitworth objected, the court immediately corrected the prosecutor, requiring him to put away a visual aid that contained this misstatement, and the trial court instructed the jury that "the defendant does get the benefit of the doubt of the jury's decision that there's a reasonable doubt in the case." Following this curative instruction, Whitworth did not renew his objection or move for a mistrial on these grounds.

"It is well settled that a sustained objection to improper argument of counsel cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike, or denied request for curative instructions." (Punctuation omitted.) *Palmer v. State.*[28] Since Whitworth requested no further action by the trial court after the curative instruction was given, there is no reversible error. Id. See *Smith v. State.*[29]

(e) Whitworth complains that the trial court did not give his requested "advice of counsel" instruction. This charge would have instructed the jury that in determining whether Whitworth acted with criminal intent, they could consider evidence that he "relied in good faith on the advice of an attorney in taking actions relevant to · this case." Whitworth does not claim that an attorney retained by him privately advised him, after he gave full disclosure, that receiving money in exchange for influencing legislation was legal. Rather, Whitworth argues that this charge was justified by evidence showing that Whitworth happened to overhear the Paroles Board's attorney advise another Board member that receiving monies from the private probation company in exchange for introducing that company to local governments was proper and did not constitute a conflict of interest.

Whitworth was not being prosecuted for receiving money in exchange for introducing the private probation company to local governments; he was being prosecuted for receiving money in exchange for procuring the passage of certain legislation. Thus, his overhearing the legal advice given to someone else on the former matter was irrelevant to this prosecution and certainly did not justify the "advice of counsel" charge he requested (assuming this charge

---

[27] *Worley v. State*, 201 Ga. App. 795, 796 (5) (412 SE2d 845) (1991).
[28] *Palmer v. State*, 271 Ga. 234, 241 (12) (517 SE2d 502) (1999).
[29] *Smith v. State*, 261 Ga. 512 (2) (407 SE2d 732) (1991).

were even proper under Georgia law, which we do not address). We discern no error in the court's refusal to give this charge.

*Judgment affirmed. Miller, J., concurs. Adams, J., concurs fully in Divisions 2 and 3 and the judgment.*

ADAMS, Judge, concurring specially.

Although I cannot agree with all of the reasoning found in Division 1, I agree with the result. Therefore I fully concur in Divisions 2 and 3 and in the judgment.

With regard to the post-recusal communications between the Attorney General's office and Morgan, any possible conflict of interest burdening the Attorney General's office cannot be automatically imputed to Morgan, who was not even a member of that office. See *Frazier v. State*, 257 Ga. 690, 694 (9) (362 SE2d 351) (1987) (the imputed disqualification rule does not apply to governmental law offices). And, although the lack of proper screening is inexcusable, Whitworth has not shown that those post-recusal communications transferred any specific, conflict of interest taint from the Attorney General's office to Morgan. More precisely, Whitworth claims that the Attorney General's office recused itself because, as a result of the Paroles Board's inquiry into claims that an employee of the Attorney General's office (and possibly the Attorney General himself) had illegally attempted to influence the Paroles Board and cover up his actions, "[t]here was too great a danger that a decision to prosecute . . . Mr. Whitworth *would be merely retaliation, or at least appear to be retaliation. . . .*" Yet, Whitworth has not presented any evidence showing that the Attorney General's office related this alleged, improper retaliatory motive to Morgan or that Morgan ever acquired or adopted any such motive as a result of the post-recusal communications. Therefore, there is no proof that Morgan was burdened or tainted with this purported conflict of interest.

With regard to Morgan's alleged personal interest in the case arising from his somewhat secretly planned employment with Mike Bowers' firm Balch & Bingham, "[i]t is possible for a disqualifying conflict of interest to arise where a prosecutor has acquired a personal interest or stake in the defendant's conviction. *Williams v. State*, 258 Ga. 305, 314-315 (369 SE2d 232) (1988)." *Head v. State*, 253 Ga. App. 757, 758 (2) (560 SE2d 536) (2002). And, "appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general." *Young v. United States*, 481 U. S. 787, 811 (III) (B) (107 SC 2124, 95 LE2d 740) (1987). But there is only speculation that any such personal interest existed here. Whitworth claims that Morgan needed to show his prospective employers that he could obtain a white-collar criminal conviction. But none of the facts developed by Whitworth,

even at the motion for new trial, show that Morgan's employment offer was dependent on a conviction. Nor has Whitworth shown that Morgan had any financial or other interest in the outcome of the case.

For these reasons, I agree with the result in Division 1.

DECIDED SEPTEMBER 29, 2005 —
RECONSIDERATION DENIED OCTOBER 13, 2005 — 

*John R. Martin*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.