## A08A1307. WILSON v. McNEELY.
## A08A1308. IN RE FRY.

(670 SE2d 846)

PHIPPS, Judge.

Gary N. Wilson filed suit in the Superior Court of Emanuel County against Richard M. McNeely for legal malpractice in connection with a real estate closing. A jury returned a verdict in favor of McNeely, and the trial court dismissed the jurors. The court next held Wilson's lawyer, David W. Fry, in criminal contempt "for the things [he] said in closing argument," without having given him a hearing. The court then terminated court proceedings.

In Case No. A08A1307, Wilson challenges the judgment entered in favor of McNeely. He contends that the trial court erred by denying his motion for recusal, showing that the defendant McNeely was a judge sitting on the same circuit as the trial court judge; by denying his motion to change venue, asserting that voir dire revealed that a large percentage of the jurors either knew McNeely, had done business with him, or had other substantial connections with him; by refusing to allow the charge conference to be recorded; by giving jury instructions that he claims were confusing and incomplete; and by denying his several motions for mistrial. Because Wilson has shown that the trial judge should have recused herself, the orders entered in the case by the judge are hereby ordered vacated as void. Wilson's remaining contentions are therefore moot.

In Case No. A08A1308, Fry contests the order holding him in criminal contempt. For reasons that follow, we vacate that judgment.

Case Nos. A08A1307 and A08A1308 are remanded for proceedings not inconsistent with this opinion.

### Case No. A08A1307

1. Wilson contends that the trial judge should have recused herself from the case. He argues that because the defendant McNeely was also a judge sitting on a court within the same circuit as the trial judge, the Middle Judicial Circuit,[1] the trial judge created an appearance of impropriety by presiding over the case.

"Canon Two of the Code of Judicial Conduct mandates that judges avoid not only actual impropriety, but that they avoid even the

---

[1] The trial court noted that McNeely was a judge on the Municipal Court of the City of Swainsboro, which is in Emanuel County, wherein the case was tried. Comprising the Middle Judicial Circuit are the counties of Emanuel, Jefferson, Washington, Toombs, and Candler. OCGA § 15-6-1 (24).

appearance of impropriety."[2] "The test for the appearance of impropriety is whether the situation would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."[3]

In *Smith v. Guest Pond Club*,[4] counsel for one of the parties was also a judge on the same court as the presiding judge.[5] The Supreme Court of Georgia observed that "our Judicial Qualifications Commission has opined that a judge of a particular court should never preside over a matter involving another judge from the same circuit:"[6]

> Simply stated, the public must believe in the absolute integrity and impartiality of its judges. . . . Consequently, even without a showing of actual bias, prejudice or unfairness, and regardless of the merits or timeliness of a Motion to Recuse, this Commission concludes that it is inappropriate for any trial court judge to preside in any action wherein one of the parties holds a judicial office on the same or any other court which sits in the same circuit ( ).[7]

The Court applied these principles in *Smith* to conclude that the judge "potentially brought the impartiality and unbiased nature of the judicial office into question, something that th[e] Court will not countenance."[8] Having determined that the trial court erred by denying the motion to recuse the judge and that the judge should not have presided over or ruled upon the matter, the Court held that "the orders entered by [the judge] in this case must be declared void and ordered vacated."[9]

This court relied upon *Smith* in *Ga. Transmission Corp. v. Dixon*,[10] where a judge presided over and ruled upon a case wherein one of the parties was also a judge on the same superior court as the presiding judge.[11] We concluded that, quite apart from whether any actual impropriety occurred, reasonable persons might have per-

---

[2] *Smith v. Guest Pond Club*, 277 Ga. 143, 145 (2) (586 SE2d 623) (2003) (punctuation and footnote omitted).

[3] *In the Matter of: Inquiry Concerning a Judge No. 97-61*, 269 Ga. 425 (499 SE2d 319) (1998) (citing Commentary to Canon Two of the Code of Judicial Conduct); see also *Smith*, supra.

[4] Supra.

[5] Id. at 145.

[6] Id. at 146.

[7] Id., quoting Judicial Qualifications Commission, Opinion 220.

[8] *Smith*, supra at 146-147.

[9] Id. at 147.

[10] 267 Ga. App. 575 (600 SE2d 381) (2004).

[11] Id.

ceived a conflict of interest in the performance of the presiding judge's official duties, thus compromising the good character of his judicial office as impartial and unbiased.[12] Consequently, we vacated as void the complained-of order entered by the judge.[13]

In accordance with *Smith* and *Dixon*, it was inappropriate for the trial judge in this case to preside over and rule upon the matter, wherein one of the parties was also a judge sitting on a court within the same circuit. The trial court erred by denying Wilson's motion to recuse; the judge should not have presided over or ruled upon this matter, and consequently, "the orders entered by [the judge] in this case must be declared void and ordered vacated."[14] Contrary to the argument advanced by McNeely, the case of *Hill v. Clayton County Bd. of Commrs.*,[15] involving a judge presiding over a case wherein one of the parties was also a sheriff of a county falling within the same judicial circuit,[16] does not control this issue to a different result.

2. In light of our disposition of Division 1, we need not consider Wilson's remaining claims of error.[17]

### Case No. A08A1308

3. Fry challenges the trial court's ruling holding him in contempt. In its order, the court elaborated that during the trial, Fry had failed to show proper respect to the witnesses and the court, that he had been warned by the court that failure to conduct himself properly would result in a holding of contempt, and that Fry had "recklessly and intentionally proceeded to make closing argument in such a fashion as to threaten the jury, impugn the integrity of Court itself and impugn the integrity of the judicial processes involving the trial of [the] case."

Fry cites *In re Jefferson*,[18] wherein the Supreme Court of Georgia clarified the proper standard for contempt in the context of courtroom advocacy and further set forth the appropriate analysis for determining when an attorney may be held in contempt.[19] Fry contends that the court erred by holding him in contempt, asserting

---

[12] Id. at 575-577 (1).

[13] Id. at 576.

[14] *Smith*, supra; see *Dixon*, supra.

[15] 283 Ga. App. 15 (640 SE2d 638) (2006).

[16] Id. at 20-21 (3).

[17] See generally *Dixon*, supra.

[18] 283 Ga. 216 (657 SE2d 830) (2008).

[19] Id. at 220-221 ("[A]n attorney may be held in contempt for statements made during courtroom proceedings only after the court has found (1) that the attorney's statements and attendant conduct either actually interfered with or posed an imminent threat of interfering with the administration of justice and (2) that the attorney knew or should have known that the statements and attendant conduct exceeded the outermost bounds of permissible advocacy.

that his conduct did not exceed the outermost limits of his proper role of zealously advocating for his client's rights. Fry asserts that the cited conduct stemmed from the erroneous denial of the motion to recuse and that he was seeking to offset the circumstances resulting therefrom in order to guard his client's right to a fair trial, one unencumbered by the appearance of partiality, favoritism, and threat of reprisal. In addition, Fry contends that he was entitled to a hearing upon the matter before a disinterested judge.

Our review of the record reveals that Fry was entitled to a contempt hearing before another trial judge.[20] Furthermore, we note that the contempt judgment at issue was rendered without the benefit of *In re Jefferson*. Under these circumstances, we vacate the contested judgment and remand the case for proceedings not inconsistent with *In re Jefferson* and this opinion.[21]

*Judgments vacated and cases remanded. Barnes, C. J., and Johnson, P. J., concur.*

---

Because contempt is a crime, the evidence must, of course, support these findings beyond a reasonable doubt. To assist in its analysis, it may be helpful for the court to consider the following non-exhaustive list of factors: (1) the extent to which the attorney was put on notice prior to the contempt citation that a continuation of the offending statements would constitute contempt; (2) the likely impact of the offending statements on the deliberations of the factfinder, which calculus incorporates both the nature and timing of the offending conduct and whether the factfinder is a judge or jury; (3) whether the offending statements occurred as an isolated incident or constituted a pattern of behavior; (4) the significance of the particular issue in question to the case as a whole and the relative gravity of the case; and (5) the extent, if any, to which the trial court provoked the offending statements with its own improper statements. Finally, in light of the important constitutional rights involved, we are of the opinion that, in adjudicating a case of possible contempt, doubts should be resolved in favor of vigorous advocacy. . . . [C]ourts must be judicious in their approach to adjudicating contempt. In considering whether to hold an attorney in contempt, the court should always assess whether there are other correctives sufficient to address the problematic conduct in question. And we echo the United States Supreme Court's admonition that trial judges must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.") (citations, punctuation and footnote omitted).

[20] See *Dowdy v. Palmour*, 251 Ga. 135, 142 (2) (d) (304 SE2d 52) (1983) (where announcement of punishment is delayed, and where the contumacious conduct was directed toward judge or where judge reacted to the contumacious conduct in such manner as to become involved in controversy, judge may give the attorney notice of specific charges, but the hearing, including attorney's opportunity to be heard, must be conducted by another judge); *In re Hatfield*, 290 Ga. App. 134, 137-139 (2) (658 SE2d 871) (2008) (where judge who held attorney in contempt had become involved in the controversy, the attorney was entitled to a hearing before another judge); *In re Scheib*, 283 Ga. App. 328, 330 (641 SE2d 570) (2007) (where court defers making judgment of contempt until after the trial has ended, it can no longer justify finding someone summarily in contempt without providing opportunity for hearing, even where conduct occurred directly before judge).

[21] See *In re Jefferson*, supra at 221 (where contempt judgment was rendered without the benefit of the standard enunciated therein, the appropriate course was to remand the case to the trial court for its consideration in conformity therewith); *In re Hatfield*, supra at 139 (3) (remanding case, where attorney held in contempt had been denied an opportunity to be heard in his own behalf and before another judge).

DECIDED DECEMBER 1, 2008.

*John R. Taylor*, for appellants.
*Brown, Rountree & Stewart, Charles H. Brown*, for appellee.