JOHNSON, Presiding Judge.
 

 James Davis died after contracting a fungal infection while being treated as a patient at Piedmont Hospital. Davis' sister, Mary Davis Reddick, filed suit individually, on behalf of Davis' estate, and on
 

 **69
 

 behalf of Davis' father, against the hospital, a construction company, and an architectural firm, alleging that construction work performed in or near the intensive care unit in which Davis was being treated "stirred up" dirt in the area, causing the deadly fungus aspergillus to become airborne and transmitted to Davis. The suit alleged that Piedmont Hospital, Inc., Beers Construction Company, and Howell Rusk Dodson-Architects, P.C., failed to take the minimal precautions necessary to protect patients from the known dangers presented by the aspergillus fungus when construction work is performed in hospitals.
 

 Finding that Reddick failed to show that the actions of the architectural firm in drawing the plans were a proximate cause of Davis' death, the trial court granted summary judgment to the architectural firm.
 

 *23
 
 And finding that Reddick failed to show that Beers performed the work in the intensive care unit in which Davis contracted the infection, the trial court granted Beers' motion for summary judgment. In Case No. A03A2297, Reddick appeals from the grant of summary judgment to the construction company. In Case No. A03A2298, Reddick appeals from the grant of summary judgment to the architectural firm. In Case No. A03A2299, the architectural firm appeals from the trial court's failure to grant its motion to dismiss or for summary judgment on two other grounds asserted by the firm. And in Case A03A2296, the hospital appeals from the trial court's denial of its motion to disqualify Davis' attorney based on two alleged violations of the rules of professional conduct.
 
 [1]
 

 Case No. A03A2297
 

 1. Reddick contends the trial court erred in granting summary judgment to Beers Construction. We disagree.
 

 To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
 
 [2]
 
 A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case.
 
 [3]
 
 A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the moving party may discharge its
 

 **70
 

 burden by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case.
 
 [4]
 
 If the moving party discharges this burden, the nonmoving party cannot rest on her pleadings, but rather must point to specific evidence giving rise to a triable issue.
 
 [5]
 

 Viewed in a light most favorable to the respondent on summary judgment, the evidence shows that Davis entered the hospital seeking treatment for food poisoning. While a patient in ICU-Blue, Davis became infected with an airborne fungus known as aspergillus. The infection caused Davis to suffer from complications such as congestive heart failure and mitral valve vegetation. After suffering a massive stroke and cardiac arrest, Davis died at Piedmont Hospital.
 

 The complaint alleges that Beers performed construction work without proper safeguards in place to protect patients, and failed to follow accepted industry standards and guidelines for patient safety during construction. The complaint cites literature stating that aspergillus fungus occurs in soil, water and decaying vegetation; that construction work "stirs up" the soil and releases aspergillus spores into the air; that dust and debris from construction activities in and around hospitals pose a grave threat to patients, especially those whose immune systems are weakened; and that it is important to maintain an environment as free as possible of aspergillus spores for patients who have suppressed immune systems.
 

 Beers moved for summary judgment, pointing to an affidavit of Robert Osburn, Beers' manager for its construction projects at the hospital, showing that Beers did not perform any construction work in or near ICU-Blue, and that Beers did no work in the general vicinity of ICU-Blue during the period in which Davis was a patient. Beers also pointed to evidence that the areas in which it worked were physically separated from patient areas such as ICU-Blue, that the areas where Beers worked were sealed with protective plastic so as to contain construction debris, that the construction areas did not share a ventilation system with the areas occupied by Davis, and that airborne contaminants originating in Beers' work sites could
 
 *24
 
 not have reached the areas through the ventilation system.
 

 In response, Reddick pointed to evidence that Beers hired Art Plumbing to do
 
 other
 
 renovation work in the hospital, that the hospital was a continuing client of Beers, and that a hospital nurse understood that Beers was going to do the construction work in ICU-Blue and saw Beers' workers in the hospital when Davis was a patient.
 

 **71
 

 Reddick's evidence is not sufficient to show the existence of genuine issues of material fact as to Beers. The nurse does not allege that Beers did any work in or near ICU-Blue, and she lacked personal knowledge or details necessary to raise genuine issues of fact in this regard. Although she lists other areas in the hospital in which Davis also received treatment, and states that Beers was working in some of those areas, Reddick's complaint is clearly based on construction activity in ICU-Blue. There is no evidence that Beers performed construction work in ICU-Blue or that Beers hired Art Plumbing to work in ICU-Blue.
 

 Moreover, even if we were to assume that Beers worked in ICU-Blue, there is an absence of medical evidence in the record showing that the fungal infection resulted from any act or omission of Beers (or the architectural firm). Reddick has argued that the aspergillus fungus is "ubiquitous" or everywhere, that it occurs in soil, water and vegetation, that persons with severely compromised immune systems are extremely susceptible to invasive aspergillus, and that Davis was severely immuno-compromised from steroid administration. Given that the aspergillus fungus is so prevalent, and patients with compromised immune systems are particularly susceptible to contracting the fungus, it was necessary for Reddick to point to medical evidence showing that it was indeed the construction activity which caused him to contract the infection. But no medical evidence of record has shown that the acts or omissions of Beers (or the architects) caused Davis to contract the fungal infection. A mere possibility of causation is not enough, and when the matter is one of pure speculation or conjecture, it becomes the duty of the court to grant summary judgment for the defendant.
 
 [6]
 

 Beers pierced Reddick's allegation that Beers caused Davis' injuries, shifting the burden to Reddick to point to evidence supporting her allegation.
 
 [7]
 
 This she failed to do. The trial court did not err in granting summary judgment to Beers.
 
 [8]
 

 2. Reddick contends the trial court erred in granting summary judgment to Beers before she was able to undertake any significant discovery. Reddick sought to postpone any ruling on the summary judgment motion claiming she had not been able to undertake significant discovery. The trial court denied her request.
 

 On appeal, we affirm a court's ruling on discovery matters unless
 

 **72
 

 the court clearly abused its discretion.
 
 [9]
 
 The record shows that Reddick served her first discovery requests on Beers six months after she filed her complaint, and then sought no other discovery from Beers for another six months. Beers waited five months after answering the complaint before moving for summary judgment. And Beers gave Reddick additional time to respond to the summary judgment motion. The hearing on Reddick's motion for additional discovery time was not held until four months after it was filed.
 

 The record shows that Reddick conducted very little discovery in the nearly one-year period between the date Beers filed its answer and the date the court granted Beers' motion for summary judgment. If Beers' responses were inadequate, Reddick could have moved to compel responses and for sanctions. In fact, the trial court expressly invited Reddick at the hearing to file a motion to compel. Reddick replied that a motion would be filed. But three weeks later,
 
 *25
 
 no such motion had been filed. It was then that the trial court ruled on the motion for summary judgment. The trial court did not clearly abuse its discretion in denying Reddick's request under OCGA § 9-11-56(f).
 
 [10]
 
 This enumeration presents no basis for reversal.
 

 3. Reddick contends the trial court erred in denying her motion to expand the record on appeal to include discovery materials which were relied upon by the parties in arguing summary judgment, but were not included in the appellate record. The documents at issue were not made a part of the record in the trial court before the court granted Beers' summary judgment motion. As we noted in our August 12, 2003 order on Reddick's motion to supplement the appellate record, the trial court was to base its decision on those materials on file in the trial court.
 
 [11]
 
 And, in reviewing the grant of summary judgment, this Court will only consider evidence presented to the trial court before that court ruled on the motion.
 
 [12]
 
 The trial court did not err in denying the motion to supplement the record.
 

 Case No. A03A2298
 

 4. Reddick contends the trial court erred in granting summary judgment to or dismissing her complaint against the architectural firm. We disagree.
 

 In her complaint, Reddick did not assert any particular manner in which the architectural firm was negligent. She asserted that "the defendants" generally failed to comply with known and accepted
 

 **73
 

 standards and guidelines for the prevention and control of fungal infections in the design, construction and maintenance of hospital facilities.
 

 The firm moved to dismiss the action based on Reddick's failure to file an expert affidavit with the complaint. Reddick then dismissed the case without prejudice, and renewed the action. The firm moved to dismiss or for summary judgment based on Reddick's failure, again, to file an expert's affidavit, as well as her failure to state a claim and failure to file within the statute of limitation period. The firm included with its motion an affidavit from firm CEO Oren Rusk stating that the firm was not involved in the ICU renovation, except that it prepared and submitted design sketches for a potential project to replace toilets and sinks in each unit. The firm pointed to evidence that it was not involved in the administration or management of Piedmont Hospital, that it had no input in the hospital's decisions regarding patient treatment, treatment locations or timing of treatment, and that it performed no construction work for the hospital. The trial court granted the firm's motion as to causation and failure to state a claim.
 
 [13]
 

 Reddick contends she was not afforded full and fair notice of the issues before the summary judgment was granted or the action against the firm was dismissed. She says the architectural firm never actually mentioned causation in its summary judgment motion, then raised the issue of causation for the first time at the hearing on the motion. Reddick complains that she was not given sufficient notice to be able to respond to the issue. We find no error.
 

 The architectural firm served Rusk's affidavit on Reddick several months before the hearing. In that affidavit, Rusk described the firm's limited role in designing the renovation and denied any role in construction, treating Davis or making any decisions regarding when or how the renovations would occur. The affidavit at least implicitly raised the issue of whether the architectural firm caused Davis' injuries. In any event, Reddick should have expected to have to
 
 *26
 
 prove causation inasmuch as causation is an essential element of a negligence claim.
 
 [14]
 
 Moreover, a trial court may grant summary judgment on a particular issue, even though the defendant did not move for summary judgment on that issue.
 
 [15]
 
 There was no error.
 
 [16]
 

 **74
 

 5. Reddick argues that she raised genuine issues of material fact regarding causation as to the architectural firm. We hold that summary judgment was properly granted in favor of the firm.
 

 To establish a negligence claim, a plaintiff must come forward with specific facts establishing the elements of negligence as to each defendant, and may not rest upon generalized allegations.
 
 [17]
 
 To support its motion for summary judgment, the firm presented the Rusk affidavit as evidence that it was not involved in the management or construction of ICU Blue, other than to submit designs for the possible lavatory replacements.
 

 In response, Reddick pointed to evidence which, she says, proves that the architects did more than just provide sketches. For instance, she relied on documents showing the firm met with hospital managers before and during construction regarding its design. And she pointed to the nurse's testimony that she was present during a meeting in which firm and hospital personnel discussed aspects of the construction, infection risks and architectural guidelines for critical care rooms.
 

 However,
 
 assuming
 
 the architectural firm had a duty to protect patients from infection risks associated with construction work, the testimony relied upon does not contradict Rusk's averments that the firm was not involved in the administration or management of the hospital, or in the timing or manner in which the hospital or the construction company engaged in construction activity. As with Beers, Reddick has failed to show that the firm's actions were a proximate cause of Davis' death.
 

 We note that Reddick submitted much of her rebuttal evidence as attachments to an affidavit from her attorney, John McIntyre, which she served on the firm at the motion hearing. Because it was not served prior to the day of the hearing, it was not timely.
 
 [18]
 
 Moreover, even if the documents were a proper part of the record, they did not create a material issue of fact justifying the denial of the firm's motion. None of the documents contradicts Rusk's affidavit wherein he swore that the architectural firm was not involved in or responsible for the administration, management, maintenance or construction work performed at the hospital. Nor do the documents demonstrate that the firm's actions caused Davis' injuries. The trial court did not err in granting summary judgment to or dismissing the case against the architectural firm.
 

 **75
 

 Case No. A03A2299
 

 6. In this cross-appeal, the architectural firm contends that the trial court erred in denying its motion to dismiss or, in the alternative, for summary judgment, because Reddick failed to file an expert affidavit as required by OCGA § 9-11-9.1 and missed the applicable statute of limitation. Given our holding in Division 5, that the trial court properly granted summary judgment or dismissal to the firm based on Reddick's failure to prove causation, we need not reach the merits of any other possible bases for dismissal or summary judgment. Therefore, the cross-appeal is dismissed as moot.
 

 Case No. A03A2296
 

 7. Reddick is represented by attorney
 
 *27
 
 McIntyre.
 
 [19]
 
 McIntyre also represents one of the hospital's employees, Rebecca Knight, RN, in a potential federal False Claims Act action brought against the hospital based on inadequate infection control policies. Knight is a "whistle blower" in that case. The hospital moved to disqualify McIntyre from representing Reddick in this case, alleging he violated rules of professional conduct by representing Knight and by contacting her and members of the hospital board.
 

 (a) Rule 4.2 of the Georgia Rules of Professional Conduct prohibits a lawyer representing a client from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter without the consent of counsel. The hospital claims McIntyre violated this rule by communicating directly with the hospital's board members and employees without its counsel's consent. The trial court declined to decide whether to disqualify McIntyre from the case for sending letters to hospital board members, stating in its order that "sanctions for violations of disciplinary rules appear to be the exclusive province of the Supreme Court of Georgia, not of this trial court."
 

 Contrary to the trial court's statement, the determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the
 
 trial judge.
 

 [20]
 
 Thus, the trial court's position that it lacked authority to make that determination was incorrect.
 
 [21]
 
 Because the trial court did have discretion which should have been applied to the motion to
 

 **76
 

 disqualify, the case must be remanded to the trial court so that it may exercise its discretion on the disqualification issue submitted below but not decided.
 

 (b) Although the trial court declined to rule on the disqualification issue as it applied to the board members, the court did render a decision with respect to McIntyre's contact with Knight. We agree with the trial court that that contact provided no basis for disqualification. Comment [4A] to Rule 4.2 provides that In the case of an organization, this Rule prohibits communications by ... lawyer[s] ... concerning the matter in representation with [anyone] having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement[s] may constitute an admission on the part of the organization.
 

 The hospital has not shown that Knight had managerial responsibility, that her acts or omissions may be imputed to the hospital in the subject matter of this case or that a statement from her could constitute an admission on the part of the hospital. No one has alleged that Knight was involved in the care of the patient in this case. Moreover, this is not a medical malpractice case and does not involve nursing or medical care; instead, it involves the spread of fungal infections allegedly due to renovation work at the hospital, and the hospital's decision to place critical care patients in an area in which construction is taking place. We note that the rule does not prohibit all contact between a lawyer and a represented employee; in fact it permits a lawyer to contact an employee, provided that talks cease if it becomes clear that the discussion poses an ethical problem and the lawyer cannot proceed in good faith.
 
 [22]
 

 The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution.
 
 [23]
 
 Disqualification not only curtails a client's right to counsel of choice, but results in expense and delay that are costly both to the client and to
 
 *28
 
 the administration of justice.
 
 [24]
 
 Courts have been reluctant to disqualify an attorney despite misgivings about an attorney's conduct, perhaps because disqualification has an immediate adverse effect on the client by separating her from counsel of her
 

 **77
 

 choice.
 
 [25]
 

 The hospital has not shown that the trial court abused its discretion in refusing to disqualify McIntyre based on his contact with Knight.
 

 (c) Although its argument is unclear on this point, the hospital contends that McIntyre has a conflict of interest which violates Rule 1.7(c)(3) of the Georgia Rules of Professional Conduct because he represents Knight. Under Rule 1.7(c)(3), a client cannot validly consent to representation if the representation involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.
 

 However, the objection that an attorney is disqualified by reason of his representing adverse interests is available only to those as to whom the attorney in question sustains, or has sustained, the relation of attorney and client.
 
 [26]
 
 The hospital has no standing to base its motion on this rule since it has no attorney-client relationship with McIntyre. This argument is without merit.
 

 The trial court's judgment on the motion to disqualify is therefore affirmed as to counsel's contact with Knight, and vacated and remanded so that the trial court can exercise its discretion regarding counsel's contact with the board members.
 

 Judgment in Case No. A03A2296 affirmed in part and vacated in part. Judgments in Case Nos. A03A2297 and A03A2298 affirmed. Case No. A03A2299 dismissed as moot.
 

 ELDRIDGE and MIKELL, JJ., concur.
 

 We note that the trial court did not grant summary judgment to the hospital on any liability issues, so the hospital's liability is not at issue on appeal.
 

 Williams v. American Med. Systems,
 

 248 Ga.App. 682
 
 ,
 
 548 S.E.2d 371
 
 (2001).
 

 Id.
 

 Id. at 682-683
 
 ,
 
 548 S.E.2d 371
 
 .
 

 Id. at 683
 
 ,
 
 548 S.E.2d 371
 
 .
 

 Shadburn v. Whitlow,
 

 243 Ga.App. 555
 
 , 556-557,
 
 533 S.E.2d 765
 
 (2000).
 

 See generally
 
 Christopher v. Donna's Country Store,
 

 236 Ga.App. 219
 
 , 220(1),
 
 511 S.E.2d 579
 
 (1999).
 

 See generally
 
 Shadburn,
 
 supra.
 

 Schoenbaum Ltd. Co. v. Lenox Pines,
 

 262 Ga.App. 457
 
 , 466(5)(b),
 
 585 S.E.2d 643
 
 (2003).
 

 See
 
 JarAllah v. Schoen,
 

 243 Ga.App. 402
 
 , 406(4),
 
 531 S.E.2d 778
 
 (2000).
 

 See OCGA §§ 9-11-56(c); 9-11-29.1;
 
 Calhoun v. Bone,
 

 189 Ga.App. 396
 
 , 398(1),
 
 375 S.E.2d 871
 
 (1988).
 

 See
 
 RC Cola Bottling Co. v. Vann,
 

 220 Ga.App. 479
 
 , 480(1),
 
 469 S.E.2d 523
 
 (1996).
 

 The court denied the architectural firm's motion regarding Reddick's failure to file an affidavit, and held that the firm's statute of limitation argument was moot. The firm appeals from these rulings in the cross-appeal (Case No. A03A2299).
 

 See generally
 
 Post Properties v. Doe
 
 ,
 
 230 Ga.App. 34
 
 , 39,
 
 495 S.E.2d 573
 
 (1997).
 

 See
 
 Plantation Pipeline Co. v. Royal Indem. Co.,
 

 245 Ga.App. 23
 
 , 29-30(4),
 
 537 S.E.2d 165
 
 (2000).
 

 See
 
 Bradley Center v. Wessner,
 

 250 Ga. 199
 
 , 200,
 
 296 S.E.2d 693
 
 (1982).
 

 See id.;
 
 Tuggle v. Helms,
 

 231 Ga.App. 899
 
 , 902(2),
 
 499 S.E.2d 365
 
 (1998).
 

 See OCGA § 9-11-56(c); see
 
 Talley v. City Tank Corp.,
 

 158 Ga.App. 130
 
 ,
 
 279 S.E.2d 264
 
 (1981).
 

 On appeal, Reddick is also represented by additional counsel.
 

 Clos v. Pugia,
 

 204 Ga.App. 843
 
 , 845(1),
 
 420 S.E.2d 774
 
 (1992);
 
 Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.,
 

 189 Ga.App. 573
 
 , 574(1),
 
 377 S.E.2d 15
 
 (1988).
 

 See, e.g.,
 
 Dismuke v. C & S Trust Co.,
 

 261 Ga. 525
 
 , 527(3),
 
 407 S.E.2d 739
 
 (1991);
 
 Ga. Baptist Health Care System v. Hanafi,
 

 253 Ga.App. 540
 
 , 541,
 
 559 S.E.2d 746
 
 (2002).
 

 See Rule 4.2, Comment [4B].
 

 Ga. Baptist Health Care System,
 
 supra.
 

 Id.;
 
 Gene Thompson Lumber Co.,
 
 supra at 574-575,
 
 377 S.E.2d 15
 
 .
 

 Reese v. Ga. Power Co.,
 

 191 Ga.App. 125
 
 , 127(2),
 
 381 S.E.2d 110
 
 (1989).
 

 See
 
 id.