### A07A2126. IN RE HATFIELD.
(658 SE2d 871)

PHIPPS, Judge.

Attorney Thomas Hatfield appeals an order finding him in criminal contempt of the Superior Court of Ware County. He claims that his right to due process was violated because he was not given notice of the contempt charge and an opportunity to be heard both in his own behalf and before another judge. He also challenges the sufficiency of the evidence to support his contempt conviction. Because Hatfield was denied an opportunity to be heard in his own behalf and before another judge, we reverse.

The record consists of the contempt order and a tape recording and transcript of the hearing at which Hatfield was found in contempt of court. The transcript reflects that Hatfield was representing a client who had two pending criminal cases in the superior court. In the first case, there was a co-defendant.

At the calendar call on Tuesday, November 28, 2006, Hatfield and his client, the prosecutor, and Hatfield's co-defendant and his attorney appeared and announced ready to try the first case during the week beginning Monday, December 4. Hatfield was given permission to release his client with the instruction that he return to court the following Monday ready to try the first case.

On Wednesday, November 29, however, the prosecutor informed Hatfield that the first case would have to be continued because Hatfield's co-defendant's attorney had a conflict, but that the second case against Hatfield's client might be called for trial.

On Thursday, November 30, Hatfield and the prosecutor appeared for the hearing at which Hatfield was held in contempt. At the hearing, Hatfield informed the court that he was not ready to try the second case because he had released his client after telling him that the first case would not be tried, he had no way of communicating with his client, and he in fact was using an investigator in an unsuccessful attempt to locate the client. The court responded that the second case was on the trial calendar for the following week although it might not be reached for trial. Noting that Hatfield's client had been ordered to return to court on Monday, the prosecutor then suggested that the second case be scheduled for trial Thursday or Friday of that week.

She also commented that she had recently received certain videotape evidence in that case. Hatfield responded that he still could not be ready for trial, because he had not seen the videotape evidence. The court then instructed Hatfield to keep trying to find his client, because the second case might be called. Hatfield again protested and complained that he had not been informed of the scheduling change at the earliest opportunity. The court then reminded Hatfield that he had been notified the day before. Hatfield responded that he had been excused from court the day before. The following colloquy then transpired:

> THE COURT: I'm telling you now, Mr. Hatfield, be ready.
> MR. HATFIELD: But my client —
> THE COURT: Did you hear me?
> MR. HATFIELD: I heard you, Judge.
> THE COURT: Then get out of here.
> MR. HATFIELD: The problem is is that my client does not know.
> THE COURT: Mr. — take him in the back, take him in the back.

As shown by the transcript, the court then continued with previously scheduled proceedings. Hatfield (accompanied by his brother and law partner Mark Hatfield) was brought back into the courtroom at the conclusion of those proceedings, whereupon the court informed him that it had found his conduct and language disrespectful and contemptuous to the extent that it obstructed the administration of justice, and Hatfield was ordered to pay a $200 fine or serve five days in the county jail. Mark Hatfield then asked the judge when he was going to file the order. The judge answered that the order would be filed, but not that day. Mark Hatfield then informed the judge that he would be requesting a supersedeas and asked if the judge would consider that. The judge responded, "Right now I'm not going to consider anything. He can go to jail or pay the $200." Mark Hatfield then noted for the record that "he will make a payment of $200 as required by the court, but it will be paid under protest and subject to appeal of this order." The court then stated "to you, Mr. Tommy Hatfield, that I should have done this — you've done it — you've crossed the line several times and I have withheld. Today you crossed it and it cost you." The written contempt order, dated November 30, was filed on December 13. Hatfield filed his notice of appeal on January 9, 2007.

1. At the outset, the state has filed a brief in which it argues that this appeal should be dismissed as moot. We cannot agree.

The Supreme Court of Georgia "has held that where a litigant is found to be in contempt of court and is ordered held in jail, his appeal of that order becomes moot upon his release from jail. The rule is the same where the litigant complies with the order of contempt by payment of the amount required."[1] Although the soundness of this rule as it applies to a litigant's payment of a sum of money has been questioned,[2] the rule remains in force without limitation.[3]

*In re Kendall*,[4] *In re Adams*,[5] and *In re Hayes*[6] were appeals of contempt convictions against attorneys. An examination of those cases shows that the proper procedure for preventing a contempt adjudication from becoming moot is to obtain a supersedeas either from the trial court or, where (as here) the trial court denies the request, from the appellate court.[7]

But neither *Kendall*, *Adams*, nor *Hayes* considered a rule cited by Hatfield, which is that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."[8] "Adverse collateral consequences can be found through recidivist statutes, parole consequences, and even 'the stigma and burden of an invalid sentence.' "[9] In light of such possible collateral consequences, the federal appellate court in *United States v. Schrimsher*[10] found that an appeal by an attorney from a finding of contempt should not have been dismissed as moot even though the contempt sanction was imposition of a sentence of confinement that had been served. In so holding, the court in *Schrimsher* recognized that a contempt of court conviction against an attorney

> would be especially damaging if [he] were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for [the attorney]. His conviction could provide a basis for

---

[1] *Herring v. Herring*, 236 Ga. 43, 44 (1) (222 SE2d 331) (1976) (citations omitted); compare *Hamilton Capital Group v. Equifax Credit Information Svcs.*, 266 Ga. App. 1, 2 (1) (596 SE2d 656) (2004) (contempt order that does not impose punishment is subject to immediate direct appeal).

[2] *Herring*, supra at 45 (Hill, J., concurring).

[3] See *Popham v. City of Kennesaw*, 262 Ga. 676 (1) (424 SE2d 780) (1993) (appeal of contempt judgment moot where contemnor had served jail sentence and paid fine).

[4] 220 Ga. App. 591 (469 SE2d 836) (1996).

[5] 215 Ga. App. 372 (450 SE2d 851) (1994).

[6] 185 Ga. App. 818 (366 SE2d 204) (1988).

[7] *Kendall*, supra at 593, n. 2; *Adams*, supra at 374; *Hayes*, supra at 819.

[8] *United States v. Camil*, 497 F2d 225, 227 (5th Cir. 1974) (citation and punctuation omitted).

[9] *Tharpe v. Head*, 272 Ga. 596, 597 (533 SE2d 368) (2000) (footnote omitted).

[10] 493 F2d 842 (5th Cir. 1974).

disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage [his] reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court.[11]

For these reasons, we agree with Hatfield that because of possible continuing adverse collateral consequences he may suffer as a result of his contempt of court conviction, his appeal of that conviction is not moot.

2. Hatfield contends that his due process rights were violated by the trial court's failure to give him notice of the charges and an opportunity to be heard both in his own behalf and before another judge. We agree.

Procedural due process requirements in criminal contempt proceedings were set forth by the United States Supreme Court in *Taylor v. Hayes*.[12] In turn, *Taylor* was adopted by our Supreme Court in *Dowdy v. Palmour*.[13] These procedural requirements all apply to conduct committed in the presence of the judge during a trial (or in this case a hearing) and observed by him.[14]

When necessary to maintain order in the courtroom, the judge has the power to declare conduct committed in his presence and observed by him to be contemptuous and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing and then to postpone the carrying out of the punishment until after trial.[15] That is not what happened here, because the court did not declare Hatfield's conduct contemptuous or announce punishment until the end of the proceeding.

Where, as here, the announcement of punishment is delayed, the judge has the power to hold a contempt hearing at the conclusion of the proceeding and, after giving the attorney reasonable notice of the specific charges and opportunity to be heard, to impose punishment, unless the contumacious conduct was directed toward the judge or the judge reacted to the contumacious conduct in such manner as to become involved in the controversy.[16]

---

[11] Id. at 844.
[12] 418 U. S. 488 (94 SC 2697, 41 LE2d 897) (1974).
[13] 251 Ga. 135, 141 (2) (304 SE2d 52) (1983).
[14] See id. at 141-142.
[15] Id.
[16] Id. at 142, citing *Taylor*, supra, 418 U. S. at 488.

This is not to say, however, that a full-scale trial is appropriate. Usually the events have occurred before the judge's own eyes, and a reporter's transcript is available. But the contemnor might at least urge, for example, that the behavior at issue was not contempt but the acceptable conduct of an attorney representing his client; or he might present matters in mitigation or otherwise attempt to make amends with the court.[17]

Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge.[18]

The initial question here thus becomes whether the conduct found to have been contumacious was directed toward the judge or whether the judge reacted to the conduct in such manner as to have become involved in the controversy, thereby requiring the contempt hearing to be held before another judge. In resolving this question, we find guidance in cases such as *Dowdy*, *In re Adams*,[19] and *Maples v. Seeliger*.[20]

In *Maples*, we recognized that it is "not every attack on a judge that disqualifies him from sitting" and that "[a] lawyer's challenge, though disruptive, recalcitrant and disagreeable, still may not be that insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification."[21] In *Maples*, where defense counsel accused the trial judge of prejudice toward his client, our examination of the dialogue between court and counsel reflected "a lack of that degree of scurrilousness raising a suspicion of bias or presence of strong feeling on the part of the trial court."[22]

In *Dowdy*, however, the allegedly contumacious conduct of one of the attorneys — in not responding when requested by the court to do so, in failing to stand when addressing the court, and in making certain facial expressions — was found to have been directed toward

---

[17] *Maples v. Seeliger*, 165 Ga. App. 201, 202 (1) (299 SE2d 906) (1983) (punctuation omitted), quoting *Dowdy*.

[18] *Dowdy*, supra, 251 Ga. at 142 (2) (d), citing *Taylor*.

[19] Supra.

[20] Supra.

[21] *Maples*, supra at 203 (2) (punctuation omitted), citing *Dowdy*.

[22] *Maples*, supra (punctuation omitted), citing *Dowdy*.

the judge, and the judge was found to have thereafter become involved in the controversy when the attorney and judge expressed differing recollections as to what had transpired. Insofar as concerned the judge becoming involved in the controversy, a situation similar to that presented in *Dowdy* reappeared in *In re Adams*.[23] Consequently, our Supreme Court in *Dowdy* and this court in *Adams* held that due process required a contempt hearing conducted by another judge.

Hatfield's conduct certainly was not an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification; nor did the judge's initial response require recusal. But when Hatfield was brought back into court at the end of the proceeding and the judge found him in contempt based at least in part on prior conduct that is not a matter of record in this proceeding, the judge thereby became involved in the controversy like the judges in *Dowdy* and *Adams*. Moreover, although the judge informed Hatfield of the conduct found to be contemptuous, he refused to give Hatfield an opportunity to be heard. Even though that omission alone does not necessarily require recusal of the judge,[24] it does necessitate a reversal of his contempt conviction and a remand for another contempt hearing. In this case, the hearing must be before another judge, not because Hatfield was denied an opportunity to be heard, but because the judge who found Hatfield in contempt became involved in the controversy.

3. Whether the evidence is sufficient to support the conviction presents a debatable question,[25] which we do not now decide.

*Judgment reversed and case remanded. Johnson, P. J., and Mikell, J., concur.*

---

[23] Supra, 215 Ga. App. at 374-377 (1).

[24] See *Maples*, supra.

[25] See generally *In re Jefferson*, 283 Ga. 216 (657 SE2d 830) (2008) (reviewing prior cases and then enunciating a more complete standard for adjudication of attorney contempt in context of courtroom advocacy); compare *Crute v. Crute*, 86 Ga. App. 96, 98 (70 SE2d 727) (1952) (discretion of superior court judges in all matters pertaining to contempt never controlled unless grossly or flagrantly abused); *In re Scheib*, 283 Ga. App. 328, 329 (641 SE2d 570) (2007) (courts of justice universally acknowledged to be vested with power to impose silence); with *In re Healy*, 241 Ga. App. 266 (526 SE2d 616) (1999) (evidence insufficient to sustain contempt conviction where counsel did not defy instruction from court in engaging in conduct found to be contemptuous and conduct itself did not constitute a sufficient predicate for contempt); *White v. State*, 105 Ga. App. 616, 625 (4) (125 SE2d 239) (1962) (attorneys must be free to vigorously represent their clients), rev'd on other grounds, 218 Ga. 290 (127 SE2d 668) (1962). We note that the transcript of the hearing shows nothing contemptuous or disrespectful in the content of what Hatfield said (although he arguably was in contempt simply for saying it), and the audio tape of the hearing shows nothing contemptuous or disrespectful in his tone.

DECIDED MARCH 7, 2008.

*Brian Steel*, for appellant.

*Richard E. Currie, District Attorney, Melanie J. Brogden, Assistant District Attorney*, for appellee.