**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 20, 2013**

# In the Court of Appeals of Georgia

A12A2335. FORD MOTOR COMPANY et al. v. YOUNG et al.

McFADDEN, Judge.

Attorneys Alan Thomas and Paul F. Malek appeal an order revoking their admission to practice as trial counsel *pro hac vice* in this product liability wrongful death case. They argue that their appeal is not moot, even though the underlying case has settled, and that they have standing to appeal, even though they were not parties below. They also argue that the trial court erred by considering the Georgia Rules of Professional Conduct and by revoking their admissions. Finally, they argue that they were entitled to notice and a hearing before the court revoked their admissions. We agree with Thomas and Malek that the issue of the revocation of their admissions *pro hac vice* is not moot and that they have standing to appeal. We hold that the trial court properly considered the Georgia Rules of Professional Conduct. But we agree with

Thomas and Malek that they were entitled to notice and an opportunity to be heard before the trial court revoked their admissions. We therefore vacate the trial court's order and remand the case for the court to allow the attorneys such due process. Consequently, we do not address the attorneys' argument that the evidence was insufficient to support the revocations.

The parents of Donald R. Young III filed this product liability action against Ford Motor Company after their son was killed when the Ford Explorer in which he was a passenger ran off the road and rolled over. Malek and Thomas are Alabama attorneys, and the Cobb County State Court granted their applications for admission *pro hac vice* to represent Ford in the litigation.

In the course of discovery, plaintiffs' counsel served Ford with a request for production of documents, asking for the production of any insurance policies that would be applicable in the case. According to the trial court, Ford "failed to disclose the applicable insurance policies, did not object, and never supplemented its response to disclose any insurance policies." Rather, it responded that Ford had sufficient resources to satisfy any judgment that reasonably could be expected to be awarded as damages.

The parties prepared a consolidated pretrial order. Section four of the pretrial order listed the individuals and entities with whom the parties would qualify the jury. The plaintiffs included in that listing "[a]ny insurer of Defendant Ford Motor Company," but counsel for Ford struck through that phrase. Ford explained that it "object[ed] to any reference to an alleged insurer of Ford. Ford has sufficient resources to satisfy any judgment that reasonably could be expected to be awarded as damages in this action, if any."

During pretrial hearings, as the parties and the trial court reviewed the pretrial order, Ford's local counsel and Thomas objected to the plaintiffs' request that the jury be qualified as to any insurer of Ford. Thomas specifically repeated the position that "Ford Motor Company essentially is self-insured to a point that it would satisfy any judgment in this case." The court explained that the issue was not whether Ford had sufficient resources to pay a judgment, but the identity of Ford's insurers so that the jury could be qualified as to anyone who had a financial interest at stake. When pressed further, Thomas said that he could not state that Ford would not make an insurance claim. He agreed to research the issue so that he could make a definitive statement on the record before the jury was qualified.

Voir dire was scheduled for the next week. According to the trial court, before voir dire began, Thomas again stated there was no insurance, but the statement was not made on the record. After an entire day of voir dire, the following colloquy occurred:

> PLAINTIFFS' COUNSEL: There's one other issue if we're moving on. This morning, when we talked about the insurance, you were going to make Mr. Thomas make a statement on the record about Ford's insurance coverage.
>
> THE COURT: Yes. You can go ahead. I don't think that we got that on the record, did we, Madam Court Reporter?
>
> PLAINTIFFS' COUNSEL: No.
>
> COURT REPORTER: No, ma'am.
>
> THOMAS: No. The question had to do with insurance, Your Honor. I made inquiries over the weekend. My understanding is, just consistent with our discovery responses in here, that there is no insurance that would be applicable to satisfy a judgment in this case. And, as we said – I've got the exact language in the discovery responses, but that it would be inappropriate to qualify as to whatever this insurance policy was – that I still haven't seen yet.
>
> THE COURT: And I'll follow up with that. But the [c]ourt then, based on the representation of Mr. Thomas, as an officer of the court, and he is able to bind his client, then, if any issue as to insurance comes up in the future, it would be a fatal error, because it was a legal challenge for cause that they were not qualified as to that. Thank you.

4

The next day, before the parties began to strike the jury, plaintiffs' counsel informed the court that Thomas had notified plaintiffs' counsel that Ford did have applicable insurance. The court stated, "Mr. Thomas stood here and you represented, on the record on behalf of Ford, and I made it clear that if you then tried to use insurance or you wanted to invoke insurance that it would be a mistrial. I've dismissed jurors, I've let people go." Local counsel for Ford explained, "We kind of dug into this a little bit further." The court responded,

> Well, we had pretrial hearings on June, I believe, 6th and 7th, and then again, maybe on the 8th. And, at that time, the court instructed Ford to provide that information on the day we were to begin striking the jury, and to be certain. And I told Mr. Thomas, at that time, along with the other attorneys, what the consequences would be and Mr. Thomas assured the court that he would find out that answer. And he represented yesterday morning that he had inquired and he had found out that information.

> Thomas explained,

> As I said yesterday, in our discovery responses, we're clear that Ford has sufficient resources to satisfy any judgment that would reasonably be expected to be awarded as damages in this action. We had the discussion yesterday. I checked. That was still correct. . . . Through our discussions yesterday, Your Honor, I put my understanding of it on there, but during

5

the discussions we made sure, Your Honor, and [local counsel] checked into it, and this is absolutely correct.

The only issue is whether there may be excess coverages that are very complicated and might kick in at some point and time, which we would not anticipate in this case. But, to be perfectly honest about it, because we wanted to make sure that before this jury was empanelled we let the court know exactly, as best we could, what the issues were.

Local counsel clarified that Ford was self-insured up to $25 million but six policies of excess coverage could be at play. (It was later determined that significantly more policies could potentially cover the judgment.)

Thomas said that he had not intentionally misled the court. He explained that he learned by email that morning of the insurance, and that he then promptly advised plaintiffs' counsel and the court. Malek, the other Alabama attorney, explained that after the pretrial hearing, he and Thomas made a "good faith inquiry" with Ford, which responded that "there was no insurance that [it] believed would be responsive to the concerns of this case and applicable to this case." Malek stated that he and Thomas did not know the information, had made efforts to obtain it, and had not made any knowing misrepresentation to the court.

The court declined to hold Thomas in contempt at that time. Counsel for plaintiff raised the issue of Thomas's *pro hac vice* admission. The court orally revoked both attorneys' admissions, and later reduced its order to writing. It found that the continued *pro hac vice* admissions "may be detrimental to the prompt, fair and efficient administration of justice," and that Malek and Thomas had violated Georgia Rules of Professional Conduct 3.3, Candor Toward the Tribunal, and 3.4, Fairness to Opposing Party and Counsel. Because the trial court had not qualified the jury pool as to Ford's insurers, the court declared a mistrial and ordered as a sanction that Ford could not contest the plaintiffs' assertion that it had failed to adequately warn consumers of the danger of a seatbelt during a rollover accident in a Ford Explorer. The plaintiffs and Ford settled and dismissed the case, and Thomas and Malek filed this appeal from the order revoking their *pro hac vice* admissions.

1. *Jurisdiction.*

"This [c]ourt has a duty to inquire into its jurisdiction to entertain each appeal." *Hammonds v. Parks*, 319 Ga. App. 792, 793 (2) (735 SE2d 801) (2012) (citation omitted). This case presents two jurisdictional issues: whether Thomas and Malek have standing to appeal and whether the appeal is moot because of the settlement and

7

dismissal of the underlying case. OCGA § 5-6-48 (b) (3); see *In the Interest of M.B.B.*, 241 Ga. App. 249, 250 (1) (a) (526 SE2d 76) (1999).

(a) *The attorneys have standing to appeal the revocation of their pro hac vice admissions.*

Whether an attorney may appeal individually the revocation of his *pro hac vice* admission based on a finding that he violated the Georgia Rules of Professional Conduct is an issue of first impression in Georgia. "Generally, only a party to a civil case, or one who has sought to become a party as by way of intervention and has been denied the right to do so, can appeal from a judgment. However, where judgment is entered against a nonparty, that nonparty becomes a party with standing to appeal." *Barham v. City of Atlanta*, 292 Ga. 375, 376 (1) (738 SE2d 52) (2013) (citations omitted). Cf. *Cooper Motor Lines v. B. C. Truck Lines*, 215 Ga. 195 (1) (109 SE2d 689) (1959) ("A party not aggrieved by the judgment of the trial court is without legal right to except thereto, since he has no just cause of complaint.") (citations and punctuation omitted).

The trial court's order made specific findings that the attorneys had violated the Georgia Rules of Professional Conduct. These findings may have continuing, adverse collateral consequences for the attorneys' careers. See Division (1) (b), infra. We thus

8

conclude that because this order bears directly upon the attorneys' interests, they are directly aggrieved by the decision. *Weeks v. Independent Sch. Dist. No. I-89*, 230 F3d 1201, 1207-1208 (II) (1) (10th Cir. 2000) (attorney was directly aggrieved by disqualification order finding violation of professional conduct and had standing to appeal the order); *Hammond v. City of Junction City*, 168 FSupp2d 1241, 1243-1244 (II) (D. Kan. 2001) (counsel have standing to appeal orders that directly aggrieve them, including orders disqualifying them as counsel for violation of rules of professional conduct). Cf. *Analytica v. NPD Research*, 708 F2d 1263, 1266 (7th Cir.1983) (declining to decide whether damage to law firm's reputation was enough to confer standing because firm clearly had standing to appeal from order directing it to pay fees for resisting order of disqualification). Consequently, Thomas and Malek have standing to appeal the order revoking their admissions. Compare *Southwire Co. v. Hull*, 212 Ga. App. 131, 132 (441 SE2d 293) (1994) (employee was not aggrieved by workers' compensation award and therefore had no standing to appeal).

(b) *The issues in this appeal are not moot.*

If the questions presented in an appeal have become moot, then the appeal must be dismissed. See OCGA § 5-6-48 (b) (3). We conclude that the issue of the

9

revocation of the attorneys' *pro hac vice* admissions is not moot even though the underlying lawsuit has settled and been dismissed.

Although no Georgia court has addressed this precise issue, we have considered the issue of mootness in an attorney's appeal of a contempt conviction against him. In *In re Hatfield*, 290 Ga. App. 134, 136-137 (1) (658 SE2d 871) (2008), we held that an attorney's appeal of his contempt conviction was not moot, even though he had paid the fine imposed, "because of possible continuing adverse collateral consequences" the attorney might suffer because of the conviction. Citing *United States v. Schrimsher*, 493 F2d 842 (5th Cir. 1974), we observed that an attorney's contempt citation could have "serious adverse career consequences" such as disciplinary action by a bar association, diminished opportunities for appointment to the bench or to other high office, damage to his reputation in the legal community, and his ability to attract clients and to represent them effectively. *In re Hatfield*, supra, 290 Ga. App. at 136-137.

The Eleventh Circuit United States Court of Appeals has addressed the issue of whether the revocation of an attorney's *pro hac vice* admission is moot when the underlying case has been dismissed. And although the decisions of the Eleventh Circuit are not binding on this court, they are persuasive authority. *Perez v. State,* 283

Ga. 196, 198 (657 SE2d 846) (2008). In *Kirkland v. Nat. Mtg. Network*, 884 F2d 1367 (11th Cir. 1989), the Eleventh Circuit held that the validity of the revocation of an attorney's *pro hac vice* admission, the only issue raised on appeal, was not moot even though the underlying case had been dismissed. Id. at 1370 (II) (A). The court observed that "[a]lthough the immediate impact of the revocation of [the attorney's] *pro hac vice* status ended with the case's dismissal, the brand of disqualification on grounds of dishonesty and bad faith could well hang over his name and career for years to come." Id. (citation, punctuation and footnote omitted.) See also *Lasar v. Ford Motor Co.*, 399 F3d 1101, 1109 (II) (9th Cir. 2005) (noting that "the prevailing view [is] that settlement of an underlying case does not preclude appellate review of an order disqualifying an attorney from further representation insofar as that order rests on grounds that could harm his or her professional reputation") (citation and punctuation omitted).

We find the reasoning of *Kirkland*, supra, 884 F2d at 1370 (II) (A), persuasive and consistent with the reasoning of *In re Hatfield*, supra, 290 Ga. App. at 136-137 (1). Here, the trial court found that the attorneys acted unfairly and with a lack of candor in violation of the Georgia Rules of Professional Conduct. These findings

11

could affect the attorneys' careers beyond the context of this case. We therefore conclude that the issue of the revocation of their *pro hac vice* admissions is not moot.

2. *The attorneys were entitled to notice and an opportunity to be heard before the trial court revoked their pro hac vice admissions.*

The attorneys argue that they were entitled to due process before the court revoked their admissions. We agree that the attorneys were entitled to notice and an opportunity to be heard.

Whether an attorney is entitled to due process before his *pro hac vice* admission may be revoked is another issue of first impression in Georgia. But the Eleventh Circuit considered the issue in *Kirkland*, supra, 884 F2d at 1367. The court reasoned that admission of an attorney *pro hac vice* constitutes a "mutually explicit understanding" sufficient to implicate a Fourteenth Amendment property interest in the admission. Id. at 1371 (II) (B). See also *Perry v. Sindermann*, 408 U.S. 593, 601 (II) (92 SCt 2694, 33 LEd2d 570) (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.") (citation omitted). Accordingly, the Eleventh Circuit reasoned that an attorney, once admitted *pro hac vice*, is entitled to the basic procedural rights

12

of notice and a hearing before the admission can be revoked. *Kirkland*, supra, at 1371 (II) (B). Compare *Leis v. Flynt*, 439 U.S. 438 (99 SCt 698, 58 LEd2d 717) (1979) (holding that an attorney is not entitled to due process in applying for *pro hac vice* admission because the "right of an out-of-state lawyer to appear *pro hac vice* in [a state] court does not fall among those interests protected by the Due Process Clause of the Fourteenth Amendment").

We agree with the Eleventh Circuit that the revocation of an attorney's *pro hac vice* admission implicates a "mutually explicit understanding" sufficient to create a limited Fourteenth Amendment property interest. Uniform Superior Court Rules 4.4 (b) (3) and 4.4 (b) (4), which concern the admission of attorneys *pro hac vice* and the revocation of their admission (and which is applicable to state courts, see Uniform State Court Rules, Note), establish criteria for the revocation of an attorney's *pro hac vice* admission. And these criteria set the standards that a trial court must follow when deciding to revoke *pro hac vice* admission and that an attorney may invoke in opposing the revocation, thereby creating a limited property interest for due process purposes. *Perry v. Sindermann*, 408 U.S. at 601 (II).

The question, then, is what process is due.

13

> The fundamental idea of due process is notice and an opportunity to be heard. Due process does not guarantee a particular form or method of state procedure. Rather, . . . due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands.

*Hood v. Carsten*, 267 Ga. 579, 580 (481 SE2d 525) (1997) (citations and punctuation omitted). Consistent with the Eleventh Circuit's holding in *Kirkland*, we hold that the trial court must afford the attorneys notice and an opportunity to respond to the charges against them before revoking their *pro hac vice* admission. See *Kirkland*, supra, at 1372 (II) (B).

As the attorneys observe in their appellate brief, this holding is in accord with the holdings of numerous courts throughout the United States. See, e.g., *Belue v. Levanthal*, 640 F3d 567, 577 (III) (A) (4th Cir. 2011) ("[W]hile it may be true that no attorney has a due process right to *pro hac vice* status. . . , once such status is granted, attorneys must receive some modicum of due process before it is revoked.") (citations omitted); *Cole v. United States Dist. Court for the Dist. of Idaho*, 366 F3d 813, 821-822 (II) (C) (9th Cir. 2004) (mandamus proceeding); *Martens v. Thomann*, 273 F3d 159, 175-176 (II) (A) (2d Cir. 2001); *Pacific Harbor Capital v. Carnival Air Lines*,

14

210 F3d 1112, 1118 (III) (9th Cir. 2000) ("[A]n opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to brief the issue fully satisfies due process requirements.") (citations omitted); *United States v. Collins*, 920 F2d 619, 626 (II) (B) (10th Cir. 1990); *Johnson v. Trueblood*, 629 F2d 302, 303-304 (II) (3rd Cir. 1980); *ACE American Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A2d 935, 947-949 (Pa. Super. Ct. 2007); *Clare v. Coleman (Parent) Holdings*, 928 So2d 1246, 1248-1249 (Fla. Ct. App. 2006); *Jensen v. Wis. Patients Comp. Fund*, 621 NW2d 902, 905-907 (II) (Wis. 2001) (requiring notice and an opportunity to be heard for policy reasons and declining to resolve due process question); *Bank of Hawaii v. Kunimoto*, 984 P2d 1198, 1213-1214 (III) (A) (Haw. 1999); *Hallmann v. Sturm Ruger & Co.*, 639 P2d 805, 807-809 (Wash. Ct. App. 1982) (holding that although attorney did not have constitutional or statutory right to notice and hearing, those steps should have been taken for policy reasons).

Here, the attorneys were not given notice of the charges against them or a meaningful opportunity to be heard. The issue of revocation arose at the beginning of the trial, just before the parties were to strike a jury, and the trial court orally revoked their admissions at that time; the attorneys were not given notice that their admissions could be revoked until the trial court revoked them. And not until the trial

15

court issued its written order were the attorneys informed of the specific Rules of Professional Conduct the trial court determined they had violated. Although the trial court allowed the attorneys to speak on the issue, they were not given a meaningful opportunity to respond to the charge that they had violated those specific rules, as they had not been given notice. Accordingly, we vacate the trial court's order revoking the attorneys' *pro hac vice* admissions and remand for the trial court to afford the attorneys notice and a meaningful opportunity to be heard before deciding the issue.

3. *The trial court properly considered the Georgia Rules of Professional Conduct.*

Thomas and Malek argue that the trial court erred in revoking their *pro hac vice* admissions on the basis of violations of Georgia Rules of Professional Conduct. They argue that the trial court lacked authority to sanction them based upon a violation of the disciplinary rules because the Georgia Supreme Court has the exclusive authority to govern the practice of law in Georgia. Because the issue will arise upon remand, we address it in spite of our vacating the order of revocation. We hold that the trial court properly considered the Georgia Rules of Professional

conduct when deciding the issue of the revocation of the attorneys' *pro hac vice* admissions.

We observe that the Supreme Court transferred the appeal to this court on the ground that "the trial court's finding that the attorneys' conduct constituted a violation of State Bar Rules [did] not invoke [the Supreme] Court's authority over lawyer disciplinary matters."

More importantly, the rule governing the admission of attorneys *pro hac vice* and the revocation of that admission explicitly includes within the trial court's authority the Georgia Rules of Professional Conduct. Uniform Superior Court Rule 4.4 (F) (1) (b), which concerns the admission of attorneys *pro hac vice* and the revocation of their admission, provides that "the [trial] court's . . . authority includes, without limitation, the court's and *State Bar of Georgia's Rules of Professional Conduct*, contempt and sanctions orders, local court rules, and court policies and procedures." (Emphasis supplied.)

And we have previously held that trial courts may disqualify attorneys for violations of the disciplinary rules. For example, in *Piedmont Hosp. v. Reddick*, 267 Ga. App. 68 (599 SE2d 20) (2004), we held that the trial court erred in ruling that, because "sanctions for violations of disciplinary rules appear to be the exclusive

17

province of the Supreme Court of Georgia, not of [the] trial court," it lacked authority to determine whether plaintiff's counsel violated Rule 4.2 of the Georgia Rules of Professional Conduct and therefore should be disqualified. Id. at 75-76 (7) (a) (punctuation omitted). We noted that the "determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the *trial judge.*" Id. at 75 (7) (a) (citations omitted; emphasis in original). See also *In re Estate of Peterson*, 255 Ga. App. 303 (565 SE2d 524) (2002), cert. denied (affirming superior court's disqualification of an attorney serving as executor of a will on the basis of violation of State Bar Rules); *Clos v. Pugia*, 204 Ga. App. 843, 844-846 (1) (420 SE2d 774) (1992), cert denied. Compare *Stevens v. Thomas*, 257 Ga. 645, 647-648 (1) (361 SE2d 800) (1987) (declining to address order disqualifying defendants' attorney for violation of State Bar Rules because appeal was not timely as to that issue, but reversing award of attorney fees against defendants because a client is not subject to sanctions for the infractions of disciplinary rules by the client's attorney).

4. *Sufficiency of the evidence*.

Because we have vacated and remanded the order revoking the attorneys' *pro hac vice* admissions, we do not address their argument that the evidence does not

18

support the trial court's finding that the attorneys violated the Georgia Rules of Professional Conduct.

*Judgment vacated and case remanded. Barnes, P. J., and Ray, J., concur.*