**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 9, 2022**

# In the Court of Appeals of Georgia

A22A0921. IN THE INTEREST OF K. P., A CHILD.

MERCIER, Judge.

In association with the juvenile court's entry of a preliminary protective order finding probable cause that K. P. was a dependent child, the Department of Family and Children Services ("Department" or "DFCS") voluntarily dismissed its underlying dependency action and filed a motion to vacate the preliminary protective order, contending that neither the action nor the order were needed. While the juvenile court recognized the voluntary dismissal, it found that the Department's motion to vacate was moot. K. P.'s mother ("Mother") now appeals, contending, among other things, that the juvenile court should have considered the motion to vacate because the preliminary protective order will continue to subject her to collateral consequences. The Department agrees with Mother's argument. For the

reasons set forth below, we reverse the trial court's finding of mootness and remand this case in order for the trial court to properly consider the Department's motion to vacate the preliminary protective order.

The record indicates that, on December 16, 2021, Mother took her 15-year-old daughter, K. P., to the hospital after a suicide attempt, and K. P.'s hospitalization was soon brought to the attention of the Department. Following a brief investigation in which Mother indicated an objection to having K. P. committed, the Department requested a dependency removal order from the juvenile court, which was granted on December 17, 2021. Thereafter, the Department filed a dependency complaint, alleging that Mother refused to allow K. P. to be treated at a mental health facility and was not adequately attending to K. P.'s mental health.

To address dependency, the juvenile court conducted a preliminary protective hearing on December 20, 2021. In opening statements, Mother informed the juvenile court that, contrary to the allegations in the dependency complaint, K. P. was being treated in a mental health facility, which the Department confirmed, and Mother had no intention of removing her until her treatment was complete. For this reason, Mother asked that the dependency complaint be dismissed. Despite receiving extremely limited evidence, along with requests from both K. P.'s attorney and the

CASA representative for a continuance so that they could talk to K. P. before any decisions were made, the trial court chose not to dismiss the action or continue it, stating at the conclusion of the hearing that:

> I don't believe at this point that we're in a stage where . . . placement into foster care is – once she is released from the hospital – is necessary. . . . So while probable [cause] has been established, . . . I don't know that [the Department] has even completed enough of an investigation to determine . . . if this child has a relative or a fictive kin that would be appropriate or if she can just be returned home with the understanding that there would be some court oversight in regard to a protective order. . . . It does not sound to me like it rises to the level that would require her to be placed in a foster care placement, but I've only heard just a little bit of evidence, so . . . that is the Court's position for today.

The juvenile court did not immediately enter a written order, however, and, after the hearing, the Department worked with K. P.'s mother, K. P.'s doctors, and K. P.'s attorney to develop a safety plan that met K. P.'s mental health needs. Following her discharge from the hospital on December 23, 2021, K.P. returned to her mother's home with the agreement of the Department and with the new safety plan in place.

Because there was no longer any concern (or evidence) that K. P.'s mother was not going to adequately care for K. P., the Department filed a voluntary dismissal of the dependency complaint on December 28, 2021, explaining to the juvenile court

that no basis for dependency existed.[1] Despite this voluntary dismissal, the juvenile court, on January 3, 2022, issued a preliminary protective order, purporting to find probable cause for a determination of dependency and the need for removal from Mother's custody, but stating at the same time that it did not have sufficient facts necessary to determine that a foster care placement was appropriate. The juvenile court also expressly withheld a ruling on whether K. P. could safely be returned home after in-patient hospitalization (although it appears that K. P. had already returned home by that time). The juvenile court also indicated in its order that family preservation services without removal and foster care might be preferable.[2]

The Department filed a motion to vacate this preliminary protective order on January 26, 2022, because K. P. had been safely returned to Mother and the

---

[1] The dismissal explained:
At this time, the Department and its counsel, the child's medical care team, the child and the child's attorney, and the mother, and the mother's counsel have developed a safety plan that meets the specific needs of the child and the family. The mother is willing to voluntarily comply with the terms of the safety plan. The child is voluntarily willing to comply with the terms of the safety plan. The child was returned to the home on December 23, 2021, and there [have] been no concerns with the mother managing the child's needs."

[2] One part of the order contemplates a foster parent taking K. P. to medical and dental appointments despite the fact that the juvenile court explicitly withheld a ruling on whether foster care would be in K. P.'s best interest.

4

Department had elected to provide family preservation services without the need of court involvement.[3] The juvenile court, however, denied the motion to vacate on mootness grounds. The court reasoned that, as a result of the Department's voluntary dismissal, the case was closed, and it did not need to consider the motion to vacate. This appeal followed.

Mother contends that the trial court erred by dismissing the Department's motion to vacate the preliminary protective order as moot, and the Department concedes that Mother's position is correct. Because the preliminary protective order subjects Mother to collateral consequences, we agree.

As a general matter, "mootness is an issue of jurisdiction and thus must be determined before a court addresses the merits of a claim." *Shelley v. Town of Tyrone*, 302 Ga. 297, 308 (3) (806 SE2d 535) (2017). A case is moot if its resolution would result in "the determination of an abstract question not arising upon existing facts or rights." *Collins v. Lombard Corp.*, 270 Ga. 120, 121 (1) (508 SE2d 653) (1998); see also *Jayko v. State*, 335 Ga. App. 684, 685 (782 SE2d 788) (2016) ("When the remedy sought in litigation no longer benefits the party seeking it, the case is moot

---

[3] Pursuant to OCGA § 15-11-32 (b), "[a]n order of the court may . . . be changed, modified, or vacated on the ground that changed circumstances so require in the best interests of a child" in appropriate circumstances.

and must be dismissed." (citation and punctuation omitted)). But there are "recognized circumstances where cases that may appear to be moot are nonetheless viable due to the particular nature of the litigated issue." *In the Interest of M. F.*, 305 Ga. 820, 821 (828 SE2d 350) (2019). These circumstances occur "when a ruling addresses an issue of significant public concern; involves an alleged error that is capable of repetition in future proceedings, yet evades appellate review; or creates collateral consequences that will continue to plague the affected party." *In the Interest of T. H.*, 319 Ga. App. 216, 218 (735 SE2d 287) (2012). See also *In the Interest of I. S.*, 278 Ga. 859, 862, (607 SE2d 546) (2005) (same).

In the past, we have found the existence of collateral consequences preventing mootness in a number of different types of situations. For example, we have held that an attorney's appeal of his contempt conviction was not moot, even though he had paid the fine imposed, "because of possible continuing adverse collateral consequences" the attorney might suffer in the future, such as disciplinary action by a bar association, diminished opportunities for appointment to the bench or to other high office, damage to his reputation in the legal community, and his ability to attract clients and to represent them effectively. *In the Interest of Hatfield*, 290 Ga. App. 134, 136-137 (1) (658 SE2d 871) (2008). Likewise, in delinquency cases, our

Supreme Court has instructed that "the consequences of a juvenile's adjudication of delinquency continue to reverberate even after the expiration of his disposition." *In the Interest of M. F.*, supra at 822 (footnote omitted). These consequences include a court's ability to consider prior adjudications of delinquency for purposes of bail and sentencing. Id. at 821-822. Additionally, we have recognized the existence of collateral consequences in the context of deprivation orders, finding that, even if a subsequent disposition order finds that a child is no longer deprived, "[an] earlier finding of deprivation [is not moot because it] may have future collateral consequences against the [parent] – i.e., in petitioning another court for permanent custody[.]" *In the Interest of L. A.*, 322 Ga. App. 94, 94 (744 SE2d 88) (2013).

In this case, Mother faces analogous collateral consequences from the juvenile court's preliminary protective order, despite the fact that the Department voluntarily dismissed the underlying dependency action. For example, the preliminary protective order could be taken into consideration by the juvenile court at a later date if Mother is involved in a subsequent dependency or termination proceeding. See, e. g., OCGA § 15-11-311 (a) (5) ("In determining whether a child is without proper parental care and control, the court shall consider, without being limited to . . . evidence of past physical, mental, or emotional neglect by the parent"). Also, the order's finding that

7

there was probable cause to believe that Mother's daughter was a dependent child due to Mother's deficient parenting and possible abuse and neglect could be used to reflect negatively on Mother if there were ever a subsequent criminal case or civil custody action filed against her. Furthermore, as a nurse, Mother could suffer damage to her reputation in the medical community as a result of the findings in the preliminary protective order. In light of these significant collateral consequences, the consideration of the Department's motion to vacate the preliminary protective order would continue to benefit Mother and would not simply be the determination of an abstract question with no extant relevance. See *Jayko*, supra. Therefore, the motion to vacate the preliminary protective order was not moot. Id. As such, the trial court's order finding otherwise must be reversed, and this case must be remanded for proper consideration of that motion.[4]

*Judgment reversed and case remanded with direction. Dillard, P. J., and Markle, J., concur.*

---

[4] Mother and the Department also argue that the preliminary protective order was deficient in various other respects. The Department originally raised a number of these contentions in its motion to vacate. Although we do not reach these issues in this opinion, they may be raised and considered on remand.